Jerome HOEPKER and Jane Hoepker, Plaintiffs-Appel-
lants-Cross Petitioners,

v.

CITY OF MADISON PLAN COMMISSION, and City of
Madison, a Municipal Corporation, Defendants-
Respondents-Petitioners.

Supreme Court

*No. 95–2013. Oral argument April 9, 1997.—Decided May 16,
1997.*

(Also reported in 563 N.W.2d 145.)

For the defendants-respondents-petitioners the cause was argued by *James M. Voss*, assistant city attorney, with whom on the briefs was *Christopher G. Wren*, assistant city attorney and *Eunice Gibson*, city attorney.

For the plaintiffs-appellants-cross petitioners there were briefs by *Steven C. Underwood* and *Annemarie G. Pace*, and *Neider & Boucher, S.C., Madison* and oral argument by *Steven C. Underwood*.

Amicus curiae was filed by *Curtis Witynski*, legal counsel, Madison, for the League of Wisconsin Municipalities.

Amicus curiae was filed by *Mark B. Hazelbaker* and *Bell, Metzner, Gierhart & Moore, S.C.*, Madison for Dane County Towns Association.

¶ 1. N. PATRICK CROOKS, J. Jerome and Jane Hoepker (collectively Hoepkers) sought preliminary plat approval for a proposed residential subdivision from the City of Madison Plan Commission and the City of Madison Common Council (collectively "City"). The City approved the preliminary plat, subject to eight conditions. The Hoepkers sought certiorari review, challenging two conditions which require them: (1) to agree to annex the land encompassed by the preliminary plat to the City; and (2) to reconfigure their

plat to provide an open space corridor.[1] The Circuit Court for Dane County, Gerald C. Nichol, Judge, entered an order denying the Hoepkers' challenge, and the Hoepkers appealed. The court of appeals held that the City could not condition approval of the plat on annexation, but could condition approval on the open space corridor.[2]

¶ 2. In this court, the City filed a petition for review of the court of appeals' decision regarding annexation, and the Hoepkers filed a cross-petition for review of the court of appeals' decision regarding the open space corridor. Thus, there are two issues before us. First, does the City have authority under Wis. Stat. § 236.45 to condition approval of the Hoepkers' preliminary plat on a requirement that they agree to annexation? Second, does the requirement that the Hoepkers reconfigure their plat to provide an open space corridor constitute a taking without just compensation under the Fifth Amendment to the United States Constitution? We hold that the City does not have authority under § 236.45 to condition approval of the preliminary plat on annexation. We further hold that the Hoepkers' takings claim is not ripe for adjudication. We therefore affirm the decision of the court of appeals in part, reverse it in part, and remand the cause for further proceedings consistent with this opinion.

---

[1] However, the Hoepkers also claim that the validity of the remaining six conditions directly depends upon the validity of these two primary conditions.

[2] *Hoepker v. City of Madison Plan Comm'n & City of Madison*, No. 95–2013, unpublished slip op. (Wis. Ct. App. Apr. 11, 1996).

## I. FACTS

¶ 3. The pertinent facts are not disputed. The Hoepkers own approximately 49 acres of land in the Town of Burke (Town), Dane County (County), Wisconsin. The property is surrounded on three sides by the City. Accordingly, since the property is within three miles of the City's corporate limits, the City has extraterritorial plat approval jurisdiction over it.[3] The Hoepkers therefore must receive plat approval from the City, Town, and County in order to develop their land.

¶ 4. In connection with plans to develop their property as a residential subdivision, the Hoepkers prepared a preliminary plat entitled "Hoepker Heights Preliminary Plat." The plat contains sixty-two single-family, residential lots with individual on-site conventional or mound-type septic disposal systems and private water supply wells. The plat also contains three outlots that will remain undeveloped until public sanitary service becomes available. The property is zoned A–1 Agriculture (non-exclusive) by the County, which permits the proposed development.

¶ 5. The Town approved the preliminary plat on January 22, 1992, and conceptually approved the draft final plat on August 4, 1993. In addition, the County conditionally approved the preliminary plat on October

---

[3] Wis. Stat. § 236.02(5) states: " 'Extraterritorial plat approval jurisdiction' means the unincorporated area within 3 miles of the corporate limits of a first, second or third class city, or 1 1/2 miles of a fourth class city or a village." Madison is a second class city for plat approval purposes. *See Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 79 n.1, 503 N.W.2d 265 (Ct. App. 1993).

27, 1992, and approved the final plat on January 25, 1994.

¶ 6. On October 11, 1993, the Hoepkers submitted their preliminary plat to the City.[4] The City's Department of Planning & Development (Department) reviewed the preliminary plat, and concluded that it did not comply with Madison General Ordinances (MGO) §§ 16.23(3)(a)5. & 16.23(3)(a)6.,[5] as well as the City's Peripheral Area Development Plan and Rattman Neighborhood Development Plan.[6] In particular, the Department indicated: "The plat is located right at the

---

[4] Upon the City's request, the Hoepkers agreed to several extensions of the ninety-day review period set forth in Wis. Stat. § 236.11(1)(a); therefore, the City was not required to approve or object to the preliminary plat until June 21, 1994.

[5] MGO § 16.23(3)(a)5. provides in relevant part:

Subdivisions shall conform to the following policies . . . ·
 c. To direct new growth to those areas capable of providing a full range of urban services and facilities. . . .
 f. To insure that new development will be organized and timed so as to permit urban services and facilities to be provided as economically and efficiently as possible.
 g. To discourage new developments in those areas that are premature in terms of planning and timing for the provision of adequate public services and facilities. . . .

MGO § 16.23(3)(a)6. provides in relevant part:

A preliminary plat or final plat of any subdivision shall not be approved unless the Plan Commission and the Common Council determine that adequate public facilities and public services are available to support and service the area of the proposed subdivision. . . .Where the Plan Commission and Common Council determine that one or more public facilities or public services are not adequate for the full development proposed . . . conditional approval . . . may require a[n] . . . annexation agreement to insure future provision of required public facilities and services.

[6] These plans are elements of the City's master plan. They detail conceptual recommendations for the area bounded by

current edge of the City, where City services are available, yet the plat will not be provided with the full range of urban services—including sanitary sewer, public water service and urban levels of police and fire protection services."[7] (R.2 at 31.) The Department explained:

> Without public sewer or public water, it is reasonable to expect that water quality problems may develop in the future here, as they have elsewhere, due to nitrate concentrations in the private wells. . . .
>
> . . . By enabling urban residential development in the township, at this time, without public sewer and water, the proposed plat would result either in the necessary urban services never becoming available to these homes, or in the services being extended to them at a later date after the area is fully developed at much greater cost.

(*Id.* at 29.) In addition, the Department concluded that the preliminary plat did not comply with a recommendation, contained in the Peripheral Area Development Plan and Rattman Neighborhood Development Plan, that an open space corridor be preserved on the south frontage of Hoepker Road[8] for a future recreational trail which will connect a proposed 250-acre open space

---

Interstate Highway 90–94, U.S. Highway 151, and Hoepker Road.

[7] The Town does not provide public sewer and water, and the Hoepkers' property is not in an urban service area of the City. Therefore, public sewer and water cannot be extended to the property unless the Central Urban Service Area is amended to include the property, which can only occur upon annexation of the property to the City.

[8] Hoepker Road runs through the Hoepkers' property, splitting it into two main parcels.

preservation area south of Hoepker Road with Token Creek County Park and Cherokee Park to the north and west. Thus, the Department recommended that the City either reject the plat, or, alternatively, approve it with eight conditions. The two primary conditions provide:

> 1. Annexation of the lands encompassed by the preliminary plat to the City of Madison, so that the full range of urban services, including public sanitary sewer and public water service, may be provided to the proposed development area in a timely manner by the City of Madison, according to established regulations, practices, policies, and procedures of the City of Madison.
>
> . . . .
>
> 4. Reconfiguration of the plat to provide an adequate open space corridor along the south frontage of Hoepker Road for a future recreational trail location.[9]

---

[9] The remaining conditions provide:

2. Amendment of the *Rattman Neighborhood Plan* to recommend that low density residential development, totaling not more than 65 [changed to 90 by City] dwelling units within the area encompassed by the present preliminary plat, is an appropriate land use for this area; and to continue to recommend that an open space corridor be maintained along the south side of Hoepker Road to accommodate a possible future public recreation trail, that no commercial development be permitted, and that no new development occur unless the full range of urban services is available.

3. Amendment of the Central Urban Service Area to include those areas of the reconfigured preliminary plat which are proposed for development, so that public sanitary sewer and public water service may be extended to the site.

. . . .

Of the two alternatives, the Department recommended that the City conditionally approve the preliminary plat.

¶ 7. On June 6, 1994, the City's Plan Commission adopted a resolution recommending that the City's Common Council conditionally approve the preliminary plat. At a public hearing held on June 21, 1994, the City's Common Council approved the preliminary plat subject to the eight conditions listed in the Department's report. The resolution also incorporated the Department's report by reference.

¶ 8. On September 15, 1994, the Hoepkers sought statutory certiorari review of the City's conditional approval of the preliminary plat pursuant to Wis. Stat. § 236.13(5). The Hoepkers mainly challenged the annexation and open space corridor conditions, but also claimed that the validity of the remaining six conditions directly depended on the validity of these two primary conditions. On the basis of the record submitted, the circuit court held that the City has authority under Wis. Stat. § 236.45 to condi-

---

5. Redesign of the plat to the extent necessary so that public sanitary sewer service and public water service from the City of Madison may be efficiently extended to it.

6. Comments of reviewing agencies.

7. Rezoning of the lands encompassed by the preliminary plat to the Planned Unit Development District, or other appropriate City of Madison zoning district(s) consistent with the recommendations of the revised *Rattman Neighborhood Development Plan,* prior to submittal of a final plat.

8. Development of the proposed residential subdivision shall not begin until the development may be provided with gravity sanitary sewer service, unless the developer agrees to provide the temporary lift station and force main needed to serve the development at an earlier date, at the developer's sole expense.

(R.9 at 29.)

tion preliminary plat approval on annexation, and that the City properly exercised such authority in this case. Therefore, the circuit court held that all conditions relating to annexation are valid. The circuit court also held that conditions two and four are valid, because the requirement that the Hoepkers reconfigure their plat to provide for an open space corridor is not an unconstitutional taking without just compensation. The court based this decision on the two-part test set forth in *Dolan v. City of Tigard*, 512 U.S. 374 (1994).[10]

¶ 9. The court of appeals reversed in part and affirmed in part. First, a majority of the court concluded that the City does not have authority under Wis. Stat. § 236.45 to condition approval on annexation for two reasons: (1) annexation, in and of itself, is not a regulation which is designed to serve the purposes of § 236.45(1), *Hoepker v. City of Madison Plan Comm'n & City of Madison*, No. 95–2013, op. at 12–13 (Wis. Ct. App. Apr. 11, 1996); and (2) conditional approval based on annexation would violate the statutory procedure set forth in chapter 66, because a municipality would be permitted to annex property against the wishes of the property owner. *Id.* at 14. Second, a different majority of the court held that the City could condition approval on reservation[11] of an open space corridor. In particular, the court of appeals determined that *Dolan* does not apply in the present case because *Dolan* involved conditional approval based on the donation of

[10] However, the circuit court did not address whether the condition constituted a taking in fact; instead, it apparently presumed that there was a taking.

[11] The majority concluded that the condition requiring the Hoepkers to provide an open space corridor constituted a reservation, not a donation or dedication. *Hoepker*, No. 95–2013, at 21.

land, whereas this case involves conditional approval based on the reservation of land. *Id.* at 21. The court also concluded that no taking occurred, because the Hoepkers have not been deprived of all beneficial use of their entire property. *Id.* at 22.

## II. STANDARD OF REVIEW

¶ 10. This case is before the court on statutory certiorari pursuant to Wis. Stat. § 236.13(5), which incorporates the review procedures of Wis. Stat. §§ 62.23(7)(e)10., 14., and 15.[12] Generally, the review standards of common-law certiorari apply in a statutory certiorari case if "a circuit court is empowered under the statute providing for certiorari to take evidence on the merits of an administrative decision but takes no such evidence. . . ." *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd. of Adjustment*, 131 Wis. 2d 101, 122, 388 N.W.2d 593 (1986). Under common-law certiorari, "the findings of the [approving authority] may not be disturbed if any reasonable view of the evidence sustains them. . . ." *Brookside*, 131 Wis. 2d at 120 (quoting *Snyder v. Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 476, 247 N.W.2d 98 (1976)).

---

[12] Although § 236.13(5) states that "[t]he court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory," § 236.13(5) also incorporates the procedures of Wis. Stat. § 62.23(7)(e)10. Section 62.23(7)(e)10. provides in relevant part: "The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review." Therefore, a reviewing court has wide discretion to fashion an appropriate remedy under § 236.13(5). *See Pederson v. Town Bd.*, 191 Wis. 2d 663, 668 n.1, 530 N.W.2d 427 (Ct. App. 1995).

¶ 11. Under Sections 236.13(5) and 62.23(7)(e)10., a circuit court may take additional evidence. In the present case, the circuit court did not do so. Therefore, the City argues that we must uphold its decision if we find any evidence in the record that it acted reasonably.

■

¶ 12. We agree that we must give deference to the City's factual reasons for conditionally approving the plat. *See Busse v. City of Madison*, 177 Wis. 2d 808, 811–12, 503 N.W.2d 340 (Ct. App. 1993). However, we disagree that we must give deference to the City's decision as to issues of law. In particular, whether an approving authority exceeded its statutory or constitutional authority is a question of law, which we review *de novo. See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 156, 162–63, 558 N.W.2d 100 (1997); *Rice v. City of Oshkosh*, 148 Wis. 2d 78, 84, 435 N.W.2d 252 (1989); *Pederson v. Town Bd.*, 191 Wis. 2d 663, 669 n.2, 530 N.W.2d 427 (Ct. App. 1995); *Gordie Boucher Lincoln-Mercury v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 84, 503 N.W.2d (Ct. App. 1993) (hereinafter "*Gordie Boucher*").[13]

## III. ANNEXATION CONDITION

¶ 13. Section 236.45(2)(a) states: "To accomplish the purposes listed in sub. (1),[14] any municipality,

[13] The Hoepkers filed a motion for summary judgment in the circuit court. However, neither the circuit court nor the court of appeals referred to the summary judgment motion in their decisions. Accordingly, we likewise do not consider this case under summary judgment methodology.

[14] Section 236.45(1) provides in relevant part: "The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be

town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter." *See also Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 64, 327 N.W.2d 642 (quoting *Jordan v. Village Menomonee Falls*, 28 Wis. 2d 608, 616, 137 N.W.2d 442 (1965), *appeal dismissed*, 385 U.S. 4 (1966)). Pursuant to this section, the City has adopted a more restrictive ordinance, MGO § 16.23(3)(a)6., which provides that the City may require an annexation agreement as part of the preliminary plat approval process "to insure future provision of required public facilities and services." Accordingly, the key issue is whether the annexation condition, which is based on MGO § 16.23(3)(a)6., complies with § 236.45.[15]

¶ 14. Section 236.45 explicitly indicates that "[t]his section . . . shall not be deemed a . . . repeal of any requirement . . . granted or appearing in this chapter or elsewhere, relating to the subdivision of lands." This language unambiguously demonstrates that the legislature did not intend to give municipalities the authority to adopt ordinances that conflict with any statute relating to the subdivision of land. As this court has explained: "[Section 236.45] reserves to the city a broad area of discretion in implementing subdivision control **provided that the ordinances it adopts** are

made are designed . . . to further the orderly layout and use of land. . . ."

[15] The City clearly could not have conditioned approval of the preliminary plat on a requirement that the Hoepkers make and install public improvements, because "only the government within which the plat lies may establish public improvement requirements." *Rice v. City of Oshkosh*, 148 Wis. 2d 78, 84–85, 435 N.W.2d 252 (1989); *see also* Wis. Stat. § 236.13(2)(a).

in accord with the general declaration of legislative intent and **are not contrary, expressly or by implication, to the standards set up by the legislature.**" *Storms*, 110 Wis. 2d at 64 (quoting *City of Mequon v. Lake Estates Co.*, 52 Wis. 2d 765, 774, 190 N.W.2d 912 (1971)) (emphasis added).

¶ 15. The legislature has set forth the standards for annexation in chapter 66. A municipality must follow these procedures, because "[a] municipal corporation has no power to extend its boundaries otherwise than as provided for by legislative enactment or constitutional provision." *Town of Madison v. City of Madison*, 269 Wis. 609, 615, 70 N.W.2d 249 (1955). In particular, ch. 66 provides safeguards so that "[n]o populated fringe area may become part of the city until the majority of electors and/or property owners in a particular area desire to annex." *In re Fond du Lac Metropolitan Sewerage Dist.*, 42 Wis. 2d 323, 333, 166 N.W.2d 225 (1969); *see also* Wis. Stat. §§ 66.021(2) & 66.024.[16]

¶ 16. Municipalities cannot coerce or unfairly induce an elector and/or property owner into agreeing to annexation. *See Town of Lafayette v. City of Chippewa Falls*, 70 Wis. 2d 610, 629, 235 N.W.2d 435 (1975) (annexation cannot be the result of any undue influence or pressure from the annexing municipality); *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis. 2d

---

[16] The statutes do specify other methods for annexation. *See* Wis. Stat. § 281.43 (annexation by order of Department of Natural Resources) (previously § 144.07); Wis. Stat. § 66.025 (annexation of territory owned by village or city). Neither of these procedures are applicable here. Moreover, even where the DNR orders annexation, the order is void if a majority of the electors and/or property owners votes against it. *See* § 281.43.

533, 539–40, 126 N.W.2d 201 (1964) (city cannot use economic pressure to promote annexation). As this court has stated:

> The signing of a petition for annexation is more than the exercise of a private right or of a property right. The right of an elector to participate in an annexation proceeding partakes of the nature of a political right "analogous to voting upon the question" and therefore must be the elector's "individual act ... discharging his duty in shaping and influencing this particular affair of government." . . . The signing of an annexation petition, like voting, constituting participation in a governmental process is governed by a higher standard of conduct than prevails in the marketplace—votes are not a commodity of commerce.

*Town of Fond du Lac*, 22 Wis. 2d at 539 (citations omitted). In *Town of Fond du Lac*, this court held that the annexation was void because the City of Fond du Lac: (1) agreed with an elector that he would obtain the signatures of his tenants on the annexation petition; (2) agreed to permit two electors to remain in their home rent free for one year if they signed the annexation petition; (3) informed two electors that they would be evicted from their home unless they agreed to sign the annexation petition. *Id.* at 536–40.

¶ 17. We conclude that, as in *Town of Fond du Lac*, the City of Madison is unduly influencing a property owner to sign an annexation petition, contrary to the safeguards provided in ch. 66. Although the City claims that it is not coercing the Hoepkers because they can refuse to sign an annexation petition and therefore not receive approval to develop their land, we do not find this argument persuasive or consider it a basis to

distinguish this case from *Town of Fond du Lac*. If the Hoepkers signed an annexation petition because the alternative would be to leave their land undeveloped, their consent would be the product of direct economic pressure from the City, similar to the situation in *Town of Fond du Lac*. Thus, the City's action is improper because it denies the Hoepkers their political right to participate in an annexation proceeding by voluntarily deciding whether to support or oppose annexation.[17] *See id.*

¶ 18. In making this determination, we have not overlooked the City's and The League of Wisconsin Municipalities' assertion that municipalities should have authority to condition plat approval on annexation, because otherwise municipalities will be forced to approve unsewered development on their immediate fringe. While this may very well be good public policy, the question of whether municipalities should have such authority is a matter for the legislature. *See Rice*, 148 Wis. 2d at 91.

¶ 19. In addition, we stress that, in the present case, the City is not being forced to approve the

---

[17] We also conclude that *Town of Hallie v. City of Chippewa Falls*, 105 Wis. 2d 533, 314 N.W.2d 321 (1982), is inapposite here. In *Town of Hallie*, electors and property owners of unincorporated territory sought sewer services from the City of Chippewa Falls. Under Wis. Stat. § 66.069(2)(c), the city had no obligation to extend sewer services outside its boundaries; therefore, the city informed the inhabitants of Hallie that it would not provide sewer services unless the area was annexed. The court determined that the city could deny extension of sewer services to unincorporated territory unless such territory was annexed to the city. *Id.* at 542. In the present case, the Hoepkers are not seeking sewer services. Thus, it is irrelevant that, pursuant to *Hallie*, the City may refuse to extend sewer services to the Hoepkers' land unless it is annexed to the City.

Hoepkers' preliminary plat. If, on remand, the City determines that the land is unsuitable for the proposed development, it may reject the preliminary or final plat. *See* MGO § 16.23(3)(a)3. However, if the City rejects the plat on suitability grounds, it must inform the Hoepkers of the particular facts upon which it bases its conclusion, and provide them with an opportunity to present evidence regarding suitability at a public hearing. *See id.*

¶ 20. In sum, we hold that Wis. Stat. § 236.45 does not authorize the City to condition approval of the Hoepkers' plat on annexation, because this would be contrary to the annexation standards set forth by the legislature in ch. 66. Accordingly, conditions one, three, five, and eight of the City's conditional approval are completely invalid, and conditions two and six are invalid to the extent that they involve annexation. In addition, after this decision, the City of Madison cannot apply MGO § 16.23(3)(a)6 to **require**, as a condition of plat approval, a person seeking to subdivide property to annex that property to the City. However, if the subdivider and the City agree to annexation, the provisions of ch. 66 provide the necessary procedure.

## IV. OPEN SPACE CORRIDOR

¶ 21. Pursuant to Wis. Stat. § 236.45, the City adopted a more restrictive ordinance, MGO § 16.23(8)(f), which provides that the City may require a developer to dedicate land for public sites or open spaces, or may require the developer to reserve such an area of land for five years, after which time the City must either acquire the reservation or release it.[18] The

---

[18] A dedication or donation requires the landowner to convey an interest in land to a municipality for a public use. *See*

City clearly has the power to condition plat approval on the donation of land, *see Jordan*, 28 Wis. 2d at 618, or on the provision of open space or greenspace, *Gordie Boucher*, 178 Wis. 2d at 97. It is likewise clear that compensation is not always required in such circumstances. *See Dolan*, 512 U.S. at 386, 391.[19] Moreover, in this case, the City concedes that it will be required to pay full compensation to the Hoepkers if it decides to physically acquire the property encompassed by the open space corridor during the five-year reservation period. Therefore, the only question before us is whether the open space corridor condition constitutes a temporary[20] "regulatory taking" for which just compensation is due under the Fifth Amendment of the

---

Wis. Stat. § 236.29(1); *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994); *Howard County v. JJM, Inc.*, 482 A.2d 908, 915 (Md. 1984). "Reservation, on the other hand, involves no conveyance but restricts the right of the subdivider and others to use the land for anything but the restricted purpose." *Howard County*, 482 A.2d at 270 (quoting D. Hagman, *Urban Planning & Land Development Control Law* § 140, at 259 (1975)). In the present case, the open space condition appears to be a reservation, because the condition does not involve a conveyance, but instead restricts the Hoepkers and others from using the open space corridor for anything but a future recreational trail.

[19] In *Dolan*, the Court held that when a municipality conditions plat approval on the donation of land, the municipality is required to compensate the landowner only if there is no "essential nexus" between the legitimate state interest and the condition, or there is no rough proportionality between the condition and the impact of the proposed development. 512 U.S. at 386, 391.

[20] A temporary deprivation may constitute a "taking." *See First English Evangelical Lutheran Church v. County of Los Angeles, Cal.*, 482 U.S. 304 (1987); *Zinn v. State*, 112 Wis. 2d 417, 427, 334 N.W.2d 67 (1983).

U.S. Constitution,[21] applicable to the states through the Fourteenth Amendment. *See Dolan*, 512 U.S. at 383.

██

¶ 22. A "regulatory taking" does not involve an actual physical occupation of property. Instead, where a regulatory taking claim is made, a plaintiff must prove that: (1) a government restriction or regulation is excessive and therefore constitutes a "taking" of property; and (2) any proffered compensation is unjust. *See MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986). Both elements must be ripe before a claim is justiciable. *See Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194 (1985).

¶ 23. In regard to the first element, the United States Supreme Court has determined that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regional Planning Comm'n*, 473 U.S. at 186. As the Court has explained:

It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion

---

[21] There is some debate over whether a "regulatory taking" involves a claim under the Taking Clause of the Fifth Amendment, or a claim of unreasonable exercise of police power under the Fourteenth Amendment. *See, e.g., Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 197–98 (1985). We do not attempt to resolve this question, since our analysis regarding ripeness applies even if we view the Hoepkers' claim as a question of due process. *See id.* at 197–200.

is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes.

*MacDonald, Sommer & Frates*, 477 U.S. at 348. Thus, the Court has stated that its precedent "uniformly reflect[s] an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." *Id.* at 351.

¶ 24. As to the second element, the Supreme Court has explained:

The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking.

*Williamson County Regional Planning Comm'n*, 473 U.S. at 194 (citations omitted). Therefore, no constitutional violation occurs until a landowner is denied just compensation. *Id.* at 194 n.13. Accordingly, the Court has determined that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id* at 195.

██

¶ 25. In the present case, the City has not made a final determination as to approval of the Hoepkers' plat. More importantly, the dimensions and exact loca-

tion of the open space corridor are presently unknown. Since it is impossible to ascertain the nature and extent of permitted development on the Hoepkers' land, we cannot determine whether the City's actions are excessive and therefore constitute a "taking." Consequently, the first element is not ripe.

¶ 26. Additionally, the legislature has established a procedure for inverse condemnation through which an individual may seek compensation for a regulatory taking. *See* Wis. Stat. § 32.10. The Hoepkers have not utilized this procedure. Thus, the second element also is not ripe.

¶ 27. Since the Hoepkers' temporary regulatory takings claim is not ripe, we do not reach the merits of this claim.[22] However, we also conclude that it is unreasonable to require the Hoepkers to wait until the final plat approval process for details as to the size and location of the open space corridor, because "[t]he purpose of a preliminary plat is to assure the subdivider that he is proceeding in an acceptable manner before he spends the money to have a final plat made." *Lakeshore Development Corp. v. Plan Comm'n of Oconomowoc Lake*, 12 Wis. 2d 560, 568, 107 N.W.2d

---

[22] We acknowledge that in *Zealy v. City of Waukesha*, 201 Wis. 2d 365, 371–72, 548 N.W.2d 528 (1996), this court reached the merits of a regulatory takings claim even though the claim was not ripe because Zealy had not sought to have his property rezoned, and therefore the decision of the city was not considered final. However, unlike the present case, the nature and extent of permitted development was known in *Zealy*; therefore, the court could determine whether the government regulation was excessive and accordingly constituted a taking. In addition, Zealy had applied for compensation under Wis. Stat. § 32.10. Thus, we consider the present case to be distinguishable from *Zealy*.

590 (1961) (quoting IV *Wisconsin Legislative Council Reports*, at 20 (1955)). Therefore, on remand, the City must provide the Hoepkers with specific details as to the size and location of the open space corridor.

¶ 28. In conclusion, we hold that Wis. Stat. § 236.45 does not authorize the City to condition plat approval on annexation, because this would contravene the procedures established by the legislature in ch. 66 by allowing the City to coerce the Hoepkers into agreeing to annexation. In addition, we conclude that the Hoepkers' temporary regulatory takings claim is not ripe for adjudication. Therefore, we remand this case to the circuit court, with directions to remand it to the City for further proceedings on the Hoepkers' application for preliminary plat approval.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause is remanded.