# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2021AP269

BRIDGET FASSETT,

PLAINTIFF-RESPONDENT,

V.

CITY OF BROOKFIELD,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | April 20, 2022 |
| Submitted on Briefs: | February 10, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, Grogan and Kornblum, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jenna Merten* of *City of Brookfield*, Brookfield. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lisa Lawless* of *Husch Blackwell LLP*, Milwaukee. |
| Nonparty ATTORNEYS: | A nonparty brief was filed by *Thomas Larson* of *Wisconsin Realtors Association,* for Wisconsin Realtors Assoc., Wisconsin Builders Association, and NAOIP-WI. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 20, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2021AP269**

STATE OF WISCONSIN

Cir. Ct. No. **2020CV317**

IN COURT OF APPEALS

---

BRIDGET FASSETT,

   PLAINTIFF-RESPONDENT,

 V.

CITY OF BROOKFIELD,

   DEFENDANT-APPELLANT.

---

        APPEAL from an order of the circuit court for Waukesha County:
MICHAEL O. BOHREN, Judge. *Affirmed*.

        Before Neubauer, Grogan and Kornblum, JJ.

        ¶1       NEUBAUER, J.  The City of Brookfield appeals from an order
reversing the City's denial of Bridget Fassett's application to divide her property
into three residential lots.  The City conditioned approval upon its requirement that

Fassett dedicate part of her property for a new public through street and pay to construct it. The circuit court concluded that this exaction was an unconstitutional taking and ordered approval of Fassett's proposed property division. The court also determined that Fassett's appeal was timely. We affirm.

## BACKGROUND

¶2 The following undisputed facts are taken from the parties' summary judgment submissions. Fassett owns a rectangular 4.93-acre parcel of land (the Property) located between two subdivisions in the City of Brookfield. The two subdivisions each have a dead-end street named Choctaw Trail that terminates at approximately the middle of the Property. The Choctaw Trail dead ends have existed for many decades, one since the 1950's, and the City anticipated they would one day be connected to form a through road.

¶3 Under the City of Brookfield's subdivision code, a property owner may ask for approval of a land division before submitting formal documentation. Approval would be subject to execution of the land division instruments, which typically consist of a plat or certified survey map ("CSM"), subdivider agreements, and other conditions.

¶4 On January 8, 2018, Fassett submitted a written request to split the Property into four pieces, three single-family home sites and one outlot with wetlands to be dedicated to the City. Fassett's request included maps of three conceptual plans: (1) creating a cul-du-sac connected to the eastern portion of Choctaw Trail, but leaving the dead end on the western side; (2) connecting both Choctaw dead ends with a through street; and (3) using a shared driveway for the two proposed southern lots from the east, leaving the two Choctaw Trail dead ends

2

in the adjacent subdivisions. Fassett stated that she preferred the third option, the shared driveway.

¶5 Fassett received feedback from the City of Brookfield plan commission and City staff at a hearing on February 12, 2018, at which time it appeared that the plan commission was in favor of accepting the staff recommendation to require the extension of Choctaw Trail across the Property. Fassett followed up with a letter explaining the basis for her preference for the third option, a shared driveway, along with information that the neighbors opposed a through street across the Property and between the Choctaw Trail two dead ends in the adjacent subdivisions.

¶6 Nonetheless, the plan commission approved and recommended that the City's common council adopt the second concept, which required that Fassett install a public through street connecting the Choctaw Trail dead ends. On June 19, 2018, the common council adopted the plan commission's recommendation. The approval was conditioned on Fassett satisfying several additional requirements, including submission of a CSM, dedication of the new through street, dedication of the wetlands outlot, and execution of a subdivision agreement.

¶7 In late 2019, Fassett submitted a preliminary survey map, a final CSM, and a subdivider agreement, requesting that the City adopt the CSM without the need for a through road connecting the two dead ends of Choctaw Trail. In addition to the site plan, Fassett submitted a master grading and erosion control plan, site utilities plan, and construction notes and details. Fassett also submitted a letter from legal counsel opining that the required dedicated through street was an unconstitutional taking known as an exaction.

3

¶8      The plan commission rejected Fassett's application, setting forth specific findings of fact. On January 21, 2020, the common council adopted those findings of fact and the plan commission's recommendation. The rationale for the condition requiring dedication of a through street was largely based on: the City's conclusion that the previous platting of the streets of the subdivisions on each side of the Property was done in anticipation of the street being connected; City of Brookfield Municipal Code § 16.16.030.G, which provides that dead-end streets and cul-de-sacs are to be minimized except when necessary due to topographical or environmental features; public safety response time benefits and improved snowplow operations; shortened distances for transportation and pedestrians; and reduced travel demand on arterial streets and collector streets.

¶9      On February 19, 2020, Fassett brought this action seeking certiorari review of the City's January 21, 2020 denial. Fassett moved for summary judgment, arguing that the City engaged in an unconstitutional taking when it refused to approve the preliminary survey map and the CSM and conditioned approval of the development on the dedication of property and construction of the through street for public use. The circuit court granted Fassett's motion for summary judgment and ordered the City to approve Fassett's application with the preliminary survey map, final CSM, and subdivider agreement depicting the land split using the shared driveway concept. The court also rejected the City's contention that the appeal was untimely. The City appeals those determinations.

**DISCUSSION**

**I. Fassett's certiorari petition was timely filed.**

¶10      The City argues as a threshold matter that Fassett's petition for certiorari review was untimely. Whether a request for certiorari review is timely is

a question of law we review de novo. *Awve v. Physicians Ins. Co. of Wis.*, 181 Wis. 2d 815, 821, 512 N.W.2d 216 (Ct. App. 1994).

¶11 A person aggrieved by the denial or failure to approve a plat "may appeal therefrom as provided in [WIS. STAT. §] 62.23(7)(e)10., 14. and 15., within 30 days of notification of the rejection of the plat." WIS. STAT. § 236.13(5) (2019-20).[1] It is undisputed that Fassett commenced certiorari review in the circuit court within thirty days of the City's January 21, 2020 decision.

¶12 Nevertheless, the City contends Fassett's failure to appeal the City's June 19, 2018 approval of the through street concept in her earlier proposal renders this appeal untimely, depriving the circuit court of jurisdiction. We disagree.[2]

¶13 Our decision in *O'Connor v. Buffalo County Board of Adjustment*, 2014 WI App 60, 354 Wis. 2d 231, 847 N.W.2d 881, provides guidance. In that case, a landowner applied for a conditional use permit ("CUP"), which was denied and not appealed. *Id.*, ¶¶2-5. The landowner later filed a second CUP application, which the board granted. *Id.*, ¶¶5, 9. Citizens filed for certiorari review, arguing that the board was precluded from considering the second CUP after the denial of the first, and as such, the applicant's sole remedy was to file for certiorari review of the first. *Id.*, ¶¶10, 12.

¶14 The court in *O'Connor* rejected this argument, first recognizing that if the CUP applicant had wished to challenge the board's denial of its first CUP

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Fassett complains that the City is raising new arguments and citing new cases regarding timeliness on appeal. Because the issue of timeliness and jurisdiction over the certiorari appeal based on the successive applications was raised by the City and decided by the circuit court, we will address the additional arguments identified by the City on appeal. *See State v. Holland Plastics Co.*, 111 Wis. 2d 497, 505, 331 N.W.2d 320 (1983).

application, it would have been required to seek certiorari review as prescribed in WIS. STAT. § 59.694(10). *O'Connor*, 354 Wis. 2d 231, ¶21. However, "nothing in § 59.694(10) prevented [the CUP applicant] from instead filing a second CUP application." *Id.* The court noted that a "municipality *may* enact a rule prohibiting a party whose application … has been denied from filing a new application absent a substantial change in circumstances," but in *O'Connor* the county had not done so. *Id.*, ¶21 (citing *Tateoka v. City of Waukesha Bd. of Zoning Appeals,* 220 Wis. 2d 656, 661, 672, 583 N.W.2d 871 (Ct. App. 1998)). *Thus, there was no identified statute, ordinance, or case that precluded the board from considering the second CUP application.*

¶15 The same is true here. Fassett was not required to seek certiorari review of the City's 2018 decision on her three conceptual plans. The City fails to identify any statute, ordinance, or case that prevents an applicant who first sought a determination of a proposed conceptual land split from submitting a second revised application for approval with a CSM and other supporting documents, such as the subdivider agreement. As such, we reject the City's unsupported contentions that Fassett was precluded from submitting the second application in 2019, or that the City was prevented from considering the second application, and more to the point, that Fassett was precluded from appealing the denial of her subsequent application seeking approval of the shared driveway concept.[3]

---

[3] Given our decision that Fassett's appeal was timely, we need not consider Fassett's contention that the City waived the timeliness challenge. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, we need not reach other issues).

## II. The City's proposed exaction is an unconstitutional taking.

### A. Applicable Certiorari Review Principles and Standards of Review

¶16     On appeal, we review the municipal body's decision, not that of the circuit court. ***Oneida Seven Generations Corp. v. City of Green Bay***, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. Our certiorari review is limited to whether: (1) the governing body acted within its jurisdiction; (2) the governing body proceeded according to law; (3) the governing body acted in an arbitrary, oppressive, or unreasonable manner that represented its will and not its judgment; and (4) the order or determination was reasonable as based on the evidence. ***Id.***, ¶41.[4] Under the statute authorizing certiorari review of municipal platting decisions, if the circuit court finds that the action of the approving authority in denying a plat was arbitrary, unreasonable, or discriminatory, the circuit court "shall direct that the plat be approved." WIS. STAT. § 236.13(5).

¶17     Here, the City required Fassett to install public improvements as a condition for approval of her proposed subdivision. A municipality may "require that the subdivider make and install any public improvements reasonably necessary or that the subdivider provide security to ensure that the subdivider will make those improvements within a reasonable time." *See* WIS. STAT. § 236.13(2)(am)1.a. The parties disagree whether the City acted according to law—namely, whether the City unconstitutionally required land dedication and construction of the street connection as conditions for approval of Fassett's proposed land split in violation of the takings clauses of the United States and Wisconsin Constitutions.

_____

[4] The circuit court noted that the parties did not request any additional fact finding by the court.

¶18    "[W]e must give deference to the City's factual reasons for conditionally approving the plat." ***Hoepker v. City of Madison Plan Comm'n***, 209 Wis. 2d 633, 644, 563 N.W.2d 145 (1997). However, we owe no deference to the City's decision when determining if an approving authority exceeded its constitutional authority, which is a question of law. ***Id.***

### B.  General Takings/Exaction Principles

¶19    Both the Fifth Amendment to the United States Constitution and article I, section 13 of the Wisconsin Constitution prohibit the taking of private property for public use without compensation.[5] These prohibitions do not ban the taking of private property for public use, "but instead place a condition on the exercise of that power ... to secure compensation" for the taking. ***Somers USA, LLC v. DOT***, 2015 WI App 33, ¶9, 361 Wis. 2d 807, 864 N.W.2d 114 (citation omitted).

¶20    The issue presented is whether the City's conditional approval of Fassett's proposed land-split development, requiring land dedication and the street connection, is a constitutionally permitted exaction, a category of regulatory takings. An "exaction" is defined as "conditioning approval of development on the dedication of property to public use." ***City of Monterey v. Del Monte Dunes at Monterey, Ltd.***, 526 U.S. 687, 702 (1999).[6] Exactions also can include conditioning

---

[5] The United States Constitution provides:  "No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.  Article I, § 13 of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation therefor."

[6] Because the Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, is substantially similar to the text of the takings provision of the Wisconsin Constitution, our supreme court "long has sought

a development approval (a permit, subdivision plat, etc.) upon the developer making some financial commitment, such as here requiring Fassett to construct a public street. *See **Koontz v. St. Johns River Water Mgmt. Dist.***, 570 U.S. 595, 612 (2013) (monetary exactions must be constitutional takings); ***Jordan v. Village of Menomonee Falls***, 28 Wis. 2d 608, 137 N.W.2d 442 (1965) (upholding ordinance requiring subdivision developer to pay fee in lieu of dedication of land as condition of subdivision approval where dedication not feasible); *see also* Brian W. Blaesser & Christine M. Kentopp, *Impact Fees: The "Second Generation,"* 38 WASH. U. J. URB. & CONTEMP. L. 55, 63-64 (1990).

¶21     The analysis of whether a government exaction is constitutional has been set forth by the United States Supreme Court in a two-part test.  First, the government must establish that an "essential nexus" exists between a legitimate government interest and the exaction. ***Nollan v. California Coastal Comm'n***, 483 U.S. 825, 837 (1987).  Second, if an exaction satisfies the essential nexus requirement, the government must demonstrate "rough proportionality" between the exaction and the impact caused by the development. ***Dolan v. City of Tigard***, 512 U.S. 374, 391 (1994).  This two-prong test is referred to as the ***Nollan/Dolan*** test. *See **Koontz***, 570 U.S. at 605-606.

¶22     The government has the burden of proving both prongs of the ***Nollan/Dolan*** test. *See **Dolan***, 512 U.S. at 391 & n.8.  On certiorari review, those

---

guidance in decisions based on the federal Takings Clause or on analogues in the constitutions of other states." *See **City of Milwaukee Post No. 2874 Veterans of Foreign Wars v. Redevelopment Auth.***, 2009 WI 84, ¶35, 319 Wis. 2d 553, 768 N.W.2d 749; *see also **E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.***, 2010 WI 58, ¶¶21, 30, 326 Wis. 2d 82, 785 N.W.2d 409.

prongs must be proven by substantial evidence. ***Oneida Seven Generations***, 362 Wis. 2d 290, ¶41.

> *C. The City has failed to show property dedication and street-connection conditions are required to mitigate any impacts caused by the proposed lot-split development.*

¶23 The heart of the issue is who pays for the land dedication and new public street the City wants—the developer through exaction or, potentially, the taxpayers through eminent domain. The ***Nollan/Dolan*** test is designed to determine whether a landowner can be required to bear the costs to mitigate anticipated negative impacts of a development, such that the exaction roughly offsets the costs of the development (financial or otherwise) to the municipality. Here, as explained below, the City has failed to meet its burden of proof to show that the property dedication and street-connection conditions are required to mitigate negative impacts caused by the proposed lot-split development.

¶24 As the Supreme Court explained in ***Koontz***, under the ***Nollan/Dolan*** test, the government "may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his [or her] property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." ***Koontz***, 570 U.S. at 599; *see also* 5 Dwight H. Merriam & Sara C. Bronin, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 90:44 (4th ed. 2021) (observing that Supreme Court case law requires that "development conditions, exactions or impact fees be reasonably related in their nature and extent to some specific problem or need generated by a particular development proposal" (footnotes omitted)).

¶25 Under ***Nollan***, "a substantial nexus must exist between the purpose for a development exaction or condition and some problem or need generated by the

particular development in question." Merriam & Bronin, § 90:45. Thus, the government must show that the proposed development created the need for the condition—such that the government has a legitimate interest in demanding mitigation of the impacts of a proposed development. *Nollan*, 483 U.S. at 838; *Koontz*, 570 U.S. at 605-606 (government may insist that the developer internalize the "negative externalities" of the development proposal, so long as there is a "nexus" and "rough proportionality" between the exaction that the government demands and the full public costs of the applicant's proposal (citation omitted)).

¶26 If an exaction satisfies the essential nexus requirement, the government also must demonstrate the exaction is "rough[ly] proportional[]" to the impact caused by the development. *Dolan*, 512 U.S. at 391. To do so, the government must make an "individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* at 391 & n.8. Thus, the nature and amount of the exaction must roughly relate to the public burden caused by the development. *Koontz*, 570 U.S. at 606 ("Under *Nollan* and *Dolan* the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts."); *see also Jordan*, 28 Wis. 2d at 618 (approving required dedication of part of subdivided lands to meet the increased demand for land for schools, parks, and playgrounds caused by the influx of people into the community to occupy the subdivided lots). Here, the City has not established an "essential nexus" between the exaction and a problem or need created by Fassett's proposed land split.

¶27 As the circuit court aptly concluded, the City's condition seeks to mitigate, or improve, the impacts of the "status quo"—the existing dead-end streets.

11

That condition was not created by Fassett's subdivision proposal, but by the platting of the earlier subdivisions which the Property abuts. When denying Fassett's application seeking the shared-driveway option, the City repeatedly pointed to the municipal code's goal of minimizing dead-end streets. The City failed to identify any anticipated impacts caused by the proposed land split, much less impacts that would be roughly proportional to the costs of the exaction.

¶28 The City's argument rests exclusively on its contention that the exaction advances public benefits. It identified public safety response time benefits and improved snowplow operations, as well as shortened distances for transportation and pedestrians. However, the City did not tie these considerations to any impact *caused by* the proposed land split. There is no evidence that the proposed development would increase congestion, decrease safety, or hinder the adequate provision of transportation. The City's desire to improve current conditions for the public's benefit, while laudable, is not sufficient to shift the cost of eliminating the dead ends to Fassett. *See Nollan*, 483 U.S. at 841 (government's belief that exaction will serve public interest "does not establish that the [landowner] alone can be compelled to contribute to its realization"). The City ignores that it must identify anticipated impacts caused by Fassett's proposed development. *See Nollan*, 483 U.S. at 838. Moreover, to require that Fassett dedicate her land and build a street without compensation, the City must show that the conditions it imposed are roughly proportional to offset the costs of those impacts, which the municipality would otherwise bear. As explained above, the City has failed to show the land split will create or exacerbate these identified public problems or needs.

12

The City does not cite to any evidence of a public financial impact caused by the proposed development that will be roughly offset with an exaction.[7]

¶29 *Nollan* illustrates the "essential nexus" analysis as applicable here. When the Nollans sought to build a larger house, the government conditioned the permits on a requirement that the Nollans dedicate an easement for public use across the beach portion of their property. *Nollan*, 483 U.S. at 827-28. While the government claimed the new house would interfere with the public's visual access to the beach from the street, it failed to show that allowing the public to walk across the beach portion of the Nollans' property would reduce viewing obstacles from the street created by the new house. *Id.* at 838-39. As a result, the Supreme Court concluded that no nexus existed between the easement condition and the anticipated public burden generated by the larger house: an obstructed view. *Id.* While the government sought a public benefit—to connect the two adjacent beaches across the Nollans' beachfront property—the absence of the connection was not caused by the larger house. *Id.* Thus, the Supreme Court concluded, the government's "regulatory authority was set completely adrift from its constitutional moorings" when it claimed a nexus existed between visual access to the ocean and the beach

---

[7] While the City, in its reply brief, contends that there will be an impact on traffic and pedestrian safety and snowplow services arising from the split *among* the three lots, there is no evidence in the record to support this contention. As to an impact on emergency services to the three lots, the local fire chief testified that from a residential standpoint his department "could deal with all three [driveway] options." To the extent the City relies on the fire chief's testimony that the dead ends may make it more difficult for first responders to know where to enter to reach the subdivisions, that too is an existing issue, not one created by the lot-split proposal.

The City also expresses consternation that the proposed lot split with a shared driveway will result in permanent dead ends. While we need not, and do not, address the availability or feasibility of eminent domain in this situation, Fassett points out that the City seeks to leapfrog over the required constitutional exaction analysis in seeking to eliminate the dead ends, a public benefit, rather than providing just compensation through eminent domain. *See Dolan*, 512 U.S. at 396 ("A strong public desire to improve the public condition [will not] warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." (alteration in original; citation omitted)).

13

easement requirement. *See **Dolan**,* 512 U.S. at 387. Here, there is not even an identified public burden generated by the lot split, and thus it follows that there can be no nexus between a legitimate government interest in mitigation and the through-street condition.

¶30     While we need not go on, one of the conditions at issue in ***Dolan*** also illustrates the lack of rough proportionality between the conditions imposed and the development at issue. Dolan sought a permit to expand the footprint of her store and pave a new parking lot next to it. ***Id.*** at 379. The city conditioned approval of the permit upon the dedication of a portion of Dolan's property for a pedestrian/bicycle path. ***Dolan***, 512 U.S. at 380. While there was a nexus between the bike path and reducing traffic congestion caused by the expansion, the city failed to establish that the bike path would roughly offset the traffic demands generated by the proposed expansion. ***Id.*** at 387-88, 395-96.

¶31     Again, here, there is not even an identified burden, i.e., increased traffic demands generated by the development that would necessitate connecting the two dead-end streets. It therefore follows that there can be no rough proportionality vis-à-vis the through-street condition.

¶32     In short, the City has not met the "essential nexus" and rough proportionality requirements because there is no evidence that the identified impacts of the dead-end streets are *caused* by the proposed lot split of the Property. Rather, it is apparent that the City would like to seize upon this opportunity to address the existing dead ends and assign the costs of providing a public benefit—a through street—to Fassett. As the United States Supreme Court has made clear, while the Takings Clause does not bar the government from requiring a developer to deal with problems of the developer's own making, it does "bar Government from forcing

some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." ***Dolan***, 512 U.S. at 384.

¶33    Thus, we affirm the circuit court order determining that the City did not act according to law and, as such, its decision was unreasonable. The application of the municipal code provision stating a preference to minimize dead ends was unreasonable because the proposed lot split did not cause the dead ends in this case. As explained herein, the exaction was unconstitutional under the ***Nollan/Dolan*** test, and thus, the circuit court appropriately ordered the City to approve Fassett's application. *See **Hartland Sportsmen's Club, Inc. v. City of Delafield***, 2020 WI App 44, ¶20, 393 Wis. 2d 496, 947 N.W.2d 214 (reversal appropriate "where the factual evidence failed to support the municipality's … decision"; "[b]ecause the decision maker cannot supplement the record with new evidence or new grounds, the defect cannot be cured").[8]

## CONCLUSION

¶34    There is no evidence that the proposed development of Fassett's property would cause any of the City's identified impacts, which are caused by the existing dead ends. As application of the ***Nollan-Dolan*** test makes clear, elimination of pre-existing needs does not establish a constitutional basis to require

---

[8] The Wisconsin Realtors Association, Wisconsin Builders Association and NAIOP-WI moved for leave to file an amicus curiae brief in support of Fassett. *See* WIS. STAT. RULE 809.19(7). In an order dated August 5, 2021, we granted the motion. Because our decision that the City's denial is an unconstitutional taking is dispositive, we decline to address an issue they alone raise—whether the City's decision is precluded under the Impact Fee Law, WIS. STAT. § 66.0617, which authorizes and regulates use of exactions and impact fees. *See **Sweet***, 113 Wis. 2d at 67 (when one issue is dispositive of an appeal, we need not reach other issues).

that Fassett bear the costs of putting into place a public through street to benefit the public at large.

By the Court.—Order affirmed.