Richard A. EBERLE and Barbara J. Eberle, Plaintiffs-Appellants-Cross-Respondents-Petitioners,

Burt AVEDON and Silvana Avedon, Involuntary Plaintiffs,

v.

DANE COUNTY BOARD OF ADJUSTMENT, Defendant-Respondent-Cross-Appellant,

Sharon CLARK-GASKILL, James E. Quackenbush, John A. Sayles, and Louise Klopp, Defendants-Respondents.

Supreme Court

*No. 97–2869–CR. Oral argument May 5, 1999.—Decided July 7, 1999.*

(Also reported in 595 N.W.2d 730.)

610

For the plaintiffs-appellants-cross respondents-petitioners there were briefs by *John A. Kassner* and *Wendel & Center, LLP,* Madison and oral argument by *John A. Kassner.*

For the defendant-respondent-cross appellant and the defendants-respondents there were briefs and oral argument by *Rodney F. Knight,* Deputy Corporation Counsel, Madison.

Amicus curiae brief was filed by *Mark M. Leitner* and *Kravit, Gass, Hovel & Leitner, S.C.,* Milwaukee for the National Association of Home Builders and Wisconsin Builders Association.

Amicus curiae brief was filed by *Michael J. Modl* and *Axley Brynelson, LLP.,* Madison for the Wisconsin Realtors Association.

¶ 1. N. PATRICK CROOKS, J. Petitioners Richard and Barbara Eberle (Eberles) sought review in this case of the court of appeals' decision to uphold the circuit court's dismissal of various claims they alleged in connection with the Dane County Board of Adjustment's (Board's) denial of a special exception permit. The Eberles contend that the effect of the permit denial was to deprive them of a legal means of access to their property. Following a certiorari review, the circuit court ordered the Board to issue the permit, a decision which the court of appeals affirmed and which has not been appealed to this court.

¶ 2.   The issue before us is whether the circuit court properly dismissed the Eberles' claims that the Board's denial of the permit constituted an unconstitutional temporary regulatory taking under the federal constitution and Article I, § 13 of the Wisconsin Constitution. The circuit court initially declined to dismiss the art. I, § 13 claim and dismissed the federal claims as not ripe, in light of the availability of the art. I, § 13 remedy. Upon reconsideration, however, the circuit court dismissed the art. I, § 13 claim, based upon the rule of *Reel Enterprises v. City of LaCrosse*, 146 Wis. 2d 662, 677, 431 N.W.2d 743 (Ct. App. 1988), *review denied*, 147 Wis. 2d 887, 436 N.W.2d 29 (1988). The court of appeals affirmed.

¶ 3.   We hold that the Eberles have stated a valid temporary regulatory taking claim under Article I, § 13 of the Wisconsin Constitution. To the extent that *Reel* prohibits the Eberles' claim, we overrule that decision as contrary to the takings jurisprudence of this court and the United States Supreme Court. Given our decision that the Eberles may pursue their art. I, § 13 claim, we hold that the Eberles' federal claims under 42 U.S.C. § 1983 are not ripe for review. It follows that the Eberles are not entitled to attorney's fees under 42 U.S.C. § 1988 at this point in the lawsuit, although nothing forecloses them from seeking such attorney's fees at a later stage in this litigation. Consistent with these conclusions, we reverse the portion of the court of appeals' decision dismissing the Eberles' art. I, § 13 claim, affirm the rest of the court's decision,[1] and remand the matter to the circuit court.

---

[1] Neither the Board nor the individual defendants responded to the Eberles' petition for review or sought review in this court of the decision of the court of appeals to affirm the circuit court's order directing the Board to issue the special

## I.

¶ 4. The Eberles are real estate developers and builders who own a tract of land in the Town of Verona (Town), Dane County (County). On January 11, 1994, after securing the approval of the County; the Eberles recorded a certified survey map dividing the land into two parcels, Lots 1 and 2. Effective with the recording of the certified survey map, the zoning of Lots 1 and 2 was changed to classifications which would permit residential uses.

¶ 5. Prior to this rezoning, Lots 1 and 2 could be accessed from either of two public roads, Coray Lane and Timber Lane. As a condition of the rezoning, however, the County, at the request of the Town,[2] imposed a requirement that access to Lot 1 occur from Timber Lane. This requirement eliminated the possibility of accessing Lot 1 (and, due to the layout of the parcels, Lot 2) from Coray Lane. By recording the certified survey map, the Eberles effectively agreed to this access restriction.

¶ 6. On February 17, 1995, the Eberles sold Lot 1 to Burt and Silvana Avedon (Avedons) and contracted to build a home on the lot for them. The deal required the Eberles to secure all necessary permits, including a

exception permit. Accordingly, we do not address the issue and the court of appeals' ruling on that point shall remain intact.

[2] Counsel for the Eberles indicated at oral argument that the primary reason that the Town opposed access from Coray Lane was that Coray Lane's location in the northwest corner of the township would require the Town's emergency vehicles and school buses to drive approximately six miles further to reach the two lots than they would have to if access were from Timber Lane. *See also* Letter from Town to Dane County Board of Adjustment of 5/10/95.

special exception permit[3] allegedly required by a Dane County ordinance to build a driveway connecting Lots 1 and 2 to Timber Lane.[4] The Eberles had petitioned the Dane County Board of Adjustment (the Board) for the special exception permit on January 20, 1995. Following the sale, the Eberles began construction on the Avedons' home.

¶ 7. Following several public hearings,[5] the Board voted 4 to 1 to deny the permit on July 27, 1995. The Board based the permit denial on its finding that

---

[3] The dissent repeatedly mischaracterizes this permit as a "building permit," in an apparent attempt to fit this case into particular language in *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304 (1987). It is undisputed, however, that the relevant permit is a "special exception permit." As explained in footnote 4, the permit was allegedly required by Dane County Ordinance § 11.05(3)(a), which states in part, "Except as provided in section 11.05(2), a *special exception permit* is required. . . ." (Emphasis added.)

[4] The special exception permit allegedly was mandated by a Dane County ordinance applicable to projects involving the filling of areas located within a certain distance of navigable waterways. *See* Dane County Ordinance § 11.05(3)(a). The majority of Lot 1 is connected to Timber Lane by a narrow strip of land approximately 1/2 mile long. Any driveway from Lot 1 to Timber Lane would have to cross a small, unnamed tributary of the Sugar River which runs through the strip of land. For purposes of this action, the Eberles accept that the tributary is navigable.

[5] At these hearings, the Eberles presented detailed plans for the construction of a driveway from Lot 1 to Timber Lane. The proposed driveway included a bridge to cross the small tributary which ran through the land. The Eberles also presented a soil erosion control plan. There is no indication that the Board had any concerns with the Eberles' proposed plans; in fact, the record reveals that the Board commented favorably on the design numerous times during the hearings.

the proposed driveway would cross a wetland and was not permitted by Dane County ordinances applicable to wetland zoning districts. The Board concluded as a matter of law that "[a]ccess to Coray Lane would not intrude into [wetland areas] and is preferred access to public road." Compl. Ex. I at 3.

¶ 8. The Eberles requested reconsideration, which the Board denied on August 24, 1995. The Eberles responded by seeking certiorari review of the denial in Dane County Circuit Court, pursuant to Wis. Stat. § 59.99(10)(1993–94).[6]

¶ 9. Subsequently, the Avedons filed a separate lawsuit against the Eberles, seeking recission of the Lot 1 purchase contract and damages. The Avedons alleged that the Eberles' failure to obtain the special exception permit deprived them of the ability to use Lot 1 by preventing the legal construction of any driveway to the property. The Avedons' suit was dismissed by stipulation of the parties after the Eberles agreed to repurchase Lot 1 for $195,000 ($20,000 more than the price paid by the Avedons) and waive all claims for the work which had been completed on the home.[7]

¶ 10. On March 13, 1996, the Eberles amended their complaint, adding as defendants the four individual Board members who had voted to deny the special exception permit. In the amended complaint, the Eberles reasserted their claim for certiorari review. They also alleged the following additional claims stem-

---

[6] Wisconsin Stat. § 59.99(10)(1993–94) was renumbered Wis. Stat. § 59.694(10)(1995–96) by 1995 Wis. Act 201.

[7] We do not determine whether, as the dissent contends, the Eberles might have avoided these damages. The proper amount of damages is an issue for trial. As we explain later in this opinion, our task at this point is only to determine whether the Eberles have stated a claim.

ming from the denial of the special exception permit: (1) inverse condemnation in violation of Wis. Stat. ch. 32 (1995–96);[8] (2) a "taking" without just compensation, or a "temporary taking" if the court orders the issuance of the permit, in violation of Article I, section 13 of the Wisconsin Constitution; (3) 42 U.S.C. § 1983 claims for violations of the United States Constitution in the form of a "taking" or "temporary taking" without just compensation contrary to the Fifth and Fourteenth Amendments and violation of the Eberles' substantive and procedural due process rights contrary to the Fifth and Fourteenth Amendments.[9] The Eberles sought actual damages totaling $1 million, punitive damages of $2 million, costs and attorney's fees for all claims, and attorney's fees under 42 U.S.C. § 1988.

¶ 11.  The Board and the individual defendants moved to dismiss all of the claims added by the amended complaint, contending that they failed to state claims upon which relief could be granted. On September 6, 1996, the circuit court, Judge Sarah B. O'Brien presiding, reversed the Board's denial of the permit and remanded the matter to the Board for a new hearing using the correct law and procedures comporting with due process. The court ruled that the Board improperly applied standards for wetland zoning districts to property of the Eberles which did not appear on any Wisconsin Wetland Inventory Map. The court also determined that the Board exceeded its jurisdic-

---

[8] Unless otherwise noted, all statutory references are to the 1995–96 version.

[9] In their amended complaint, the Eberles also alleged claims under 42 U.S.C. §§ 1985(3) and 1986. The plaintiffs withdrew these claims in their Brief in Opposition to Motion to Dismiss, filed in the circuit court on May 16, 1996.

tion and acted arbitrarily and unreasonably when it found that access from Coray Lane, which the County itself had prohibited, was preferable.[10] Finally, the court found that the Board denied the Eberles due process of law by relying on an *ex parte* letter and an *ex parte* site visit. In light of its decision to remand the case, the court deemed it unnecessary to consider the defendants' motion to dismiss the claims added by the amended complaint or other issues raised by the pleadings.

¶ 12.   Both the Eberles and the defendants sought reconsideration. On November 8, 1996, Judge O'Brien determined that her September 6, 1996, decision to remand the matter was incorrect. Finding that the record in this case was complete, the court reversed the Board's decision and ordered the Board to issue the special exception permit to the Eberles.

¶ 13.   This time, the circuit court went on to address the additional claims raised by the amended complaint. First, the court dismissed the Eberles' claim of inverse condemnation under Wis. Stat. ch. 32. The court reasoned that the Board was not "a person possessing the power of condemnation," as required by Wis. Stat. § 32.10. Further, even if the complaint were amended to add Dane County as the defendant, the court characterized the Eberles' claim as a "temporary taking" claim, which, under *Zinn v. State*, 112 Wis. 2d 417, 433, 334 N.W.2d 67 (1983), cannot be remedied through ch. 32 but gives rise to a claim directly under

---

[10] The court inadvertently stated in its September 6, 1996, Decision and Order that the Board found that access from *Timber Lane* (rather than Coray Lane) was preferable. As the court of appeals noted, the court corrected that error in a later Decision and Order. *See* Decision and Order, November 8, 1996 at n.1, 1–2.

Article I, § 13 of the Wisconsin Constitution. Pursuant to this reasoning, the court denied the defendants' motion to dismiss the Eberles' art. I, § 13 claim.[11]

¶ 14. Finally, the court dismissed the Eberles' federal constitutional claims based on 42 U.S.C. § 1983, concluding that they were not ripe for adjudication.[12] Relying mainly on *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194–95 (1985), the court concluded that the Eberles must exhaust their state law remedies, which in this case consisted of their art. I, § 13 taking claim, before their § 1983 claims would be ripe.

¶ 15. The defendants moved for reconsideration and the Eberles requested clarification of the November 8, 1996, order. On July 11, 1997, Judge O'Brien issued a third decision and order in the matter. Based on *Reel*, the circuit court reversed its November order and granted the defendants' motion to dismiss the Eberles' art. I, § 13 temporary taking claim. The court reasoned that, under the rule of *Reel*, this case involved no legally imposed restriction, and thus, no taking, because the circuit court had reversed the Board's denial of the permit.

---

[11] The circuit court declined to address the individual defendants' argument that this claim should be dismissed on grounds of immunity under Wis. Stat. § 893.80(4). The court concluded that the issue of qualified immunity could be raised by summary judgment prior to trial but could not be decided on a motion to dismiss.

[12] In doing so, the court discussed only the Eberles' claim of a taking under the Fifth Amendment of the United States Constitution, and did not mention the Eberles' substantive and procedural due process claims under 42 U.S.C. § 1983 or their claim for attorney's fees under 42 U.S.C. § 1988.

¶ 16.   The court also dismissed all of the Eberles' remaining claims. The court dismissed the remaining 42 U.S.C. § 1983 claims, finding that the Eberles' procedural and substantive due process rights had not been violated. In light of the dismissal of the § 1983 claims, the court ruled that the Eberles were not entitled to attorney's fees under 42 U.S.C. § 1988.

¶ 17.   The Eberles appealed the circuit court's orders dismissing their claims[13] and the Board cross-appealed from the circuit court's order requiring the Board to issue the special exception permit. The court of appeals affirmed all of the circuit court's orders in an opinion filed August 20, 1998. *Eberle v. Dane County Bd. of Adjustment*, No. 97–2869, unpublished slip op. at 3 (Wis. Ct. App. Aug. 20, 1998).

¶ 18.   After an independent review of the record, the court of appeals determined that the circuit court had correctly ordered the Board to issue the special exception permit. *Id.* at 12. The court of appeals also agreed with the circuit court that *Reel* required the dismissal of the art. I, § 13 temporary taking claim.[14] *Id.* at 13.

¶ 19.   The court of appeals, like the circuit court, concluded that the 42 U.S.C. § 1983 due process claims were not ripe. *See id.* at 13–16. Although the court concluded that the Board's actions did implicate the

---

[13] The Eberles did not appeal the circuit court's dismissal of their inverse condemnation claim under Wis. Stat. ch. 32.

[14] The court of appeals declined to consider the Eberles' argument that *Reel* is unconstitutional and contrary to other binding decisions, noting that the court of appeals does not have the power to overrule its own published decisions. *Eberle v. Dane County Bd. of Adjustment*, No. 97–2869, unpublished slip op. at 13–14 (Wis. Ct. App. Aug. 20, 1998) (citing *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997)).

Eberles' rights to substantive and procedural due process, it stated that those actions had "been nullified" by the circuit court's order to issue the permit and the court of appeals' affirmance of that order. *Id.* at 16 & n.13. According to the court of appeals, the Board's actions "represent the type of arbitrary and unreasonable agency action for which state-law certiorari proceedings can—and in this case did—provide a full remedy." *Id.* at 16 n.13.

¶ 20.   Finally, the court of appeals rejected the Eberles' claim for attorney's fees under 42 U.S.C. § 1988. *Id.* at 17. Citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983), the court of appeals ruled that § 1988 attorney's fees were not available where no civil rights claim under § 1983 has been successfully stated. *Id.* at 17.

## II.

■

¶ 21.   We granted the Eberles' petition for review of the court of appeals' decision. Because that decision affirmed the circuit court's grant of a motion to dismiss the Eberles' amended complaint, the question before this court is whether the amended complaint states a claim upon which relief can be granted. *See Zinn*, 112 Wis. 2d at 423. In such situations, we are to construe the pleadings liberally in order "to do substantial justice between the parties." *Id.* Dismissal of the complaint is appropriate only if it seems certain that a court could not grant relief upon any set of circumstances that the plaintiffs could prove. *See id.*

## III.

¶ 22.   Article I, § 13 of the Wisconsin Constitution provides, "The property of no person shall be taken for public use without just compensation therefor." When determining whether art. I, § 13 is triggered by factual allegations concerning a particular piece of property, the threshold inquiry is whether the property has been "taken." *See Zealy v. City of Waukesha*, 201 Wis. 2d 365, 378, 548 N.W.2d 528 (1996); *Zinn*, 112 Wis. 2d at 424.

### A.

¶ 23.   A "taking" need not arise from an actual physical occupation of land by the government. *Howell Plaza, Inc., v. State Highway Comm'n*, 92 Wis. 2d 74, 81, 87, 284 N.W.2d 887 (1979) [hereinafter *Howell Plaza II*] (citing *Howell Plaza, Inc., v. State Highway Comm'n*, 66 Wis. 2d 720, 726, 226 N.W.2d 185 (1975) [hereinafter *Howell Plaza I*]). In expanding the definition of "taking" beyond actual physical invasions, in *Howell Plaza I* this court explained:

> [T]he absolute position. . .that there must be an actual physical occupation by the condemning authority, is not the only test of a "taking." There can be a "taking" if a restriction, short of an actual occupation, deprives the owner of all, or substantially all, of the beneficial use of his property.

*Howell Plaza I*, 66 Wis. 2d at 726.

¶ 24.   In *Howell Plaza II*, recognizing that "[s]ome of the language in [*Howell Plaza I*] is broad enough to allow the finding of a 'taking' whenever a property owner is unable to beneficially use his property, even where this is only an indirect result of government

action," we refined the definition of "taking" which we had set forth in *Howell Plaza I*. *Howell Plaza II*, 92 Wis. 2d at 87. We stated that, "A taking can occur absent physical invasion only where there is a legally imposed restriction upon the property's use." *Id.* at 88.

¶ 25.    Takings which do not involve physical invasions of land are called "regulatory takings." *See Hoepker v. City of Madison Plan Comm'n*, 209 Wis. 2d 633, 651, 563 N.W.2d 145 (1997). Such takings are now well established in Wisconsin law.[15] The rule applied by Wisconsin and federal courts is that a regulation or government action "must deny the landowner all or substantially all practical uses of a property in order to be considered a taking for which compensation is required." *Zealy*, 201 Wis. 2d at 374.[16]

██

¶ 26.    Both the Wisconsin Supreme Court and the United States Supreme Court have recognized that just compensation is constitutionally required for "temporary regulatory takings," or regulatory takings which continue for only a temporary period of time. *See First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304, 318 (1987); *Zinn*, 112

---

[15] *See* Brian W. Ohm, *Towards a Theory of Wisconsin Regulatory Takings Jurisprudence*, 4 Wis. Envtl. L.J. 173, 175 (Summer, 1997) (calling this court "a national leader in the development of regulatory takings jurisprudence.")

[16] *See Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980)); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *Zinn v. State*, 112 Wis. 2d 417, 429, 334 N.W.2d 67 (1983); *Howell Plaza, Inc. v. State Highway Comm'n*, 92 Wis. 2d 74, 81–82, 284 N.W.2d 887 (1979); *Just v. Marinette County*, 56 Wis. 2d 7, 15, 201 N.W.2d 761 (1972) (quoting *Buhler v. Racine County*, 33 Wis. 2d 137, 143, 146 N.W.2d 403 (1966)).

Wis. 2d at 429. The leading case on temporary regulatory takings in Wisconsin is *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983).[17] Since this case involves an alleged temporary regulatory taking, we examine *Zinn* in some detail.

¶ 27. *Zinn* was an action brought by Rose Zinn, the sole owner of the riparian rights to a lake and all of the land around it. *Zinn*, 112 Wis. 2d at 420. The Department of Natural Resources (DNR) issued a ruling which effectively reset the ordinary high water mark of the lake to a location beyond the boundaries of Zinn's land. *Id.* at 421. The ruling resulted in the statutory retitling of 200 acres of Zinn's land to the state in trust for the public and Zinn's loss of ownership of the riparian rights. *Id.* The DNR granted Zinn's petition for rehearing and rescinded the ruling almost two years from the day it took effect, thus reinstating Zinn's ownership rights. *Id.*

¶ 28. Subsequently, Zinn filed a lawsuit against the state, alleging that the DNR's ruling, during the period it was in effect, constituted a taking of her land for public use requiring just compensation under Article I, § 13 of the Wisconsin Constitution. *Id.* at 422. This court reversed the court of appeals' holding that Zinn's claim should be dismissed, holding that Zinn had stated a valid claim for a temporary regulatory taking under art. I, § 13. *Id.* at 423–24.

¶ 29. The *Zinn* court concluded that the DNR's ruling was a "legally imposed restriction on Zinn's property" under *Howell Plaza II* and rejected the position that a temporary governmental restraint on

---

[17] For a discussion of *Zinn*, see Alemante Gebre-Selassie, Note, *Inverse Liability of the State of Wisconsin for a De Facto "Temporary Taking" as a Result of an Erroneous Administrative Decision: Zinn v. State*, 1984 Wis. L. Rev. 1431 (1984).

property could not be a taking. *Id.* at 427. The court stated, "It would violate the constitutional mandate of the just compensation clauses of the Wisconsin and United States Constitutions to hold that a temporary taking is not compensable."[18] *Id.* at 427–28. Adopting the reasoning of Justice Brennan's dissent in *San Diego Gas & Electric Company v. San Diego*, 450 U.S. 621, 653–54, 657 (1981), this court concluded:

> The test to determine whether there was a taking is whether the government action deprived the property owner of all or substantially all beneficial use of the property. While the length of the time period of the restriction is a factor in determining whether such a deprivation has occurred *once this test is satisfied there has been taking even though the property owner has regained full use of the property due to the government's rescission of the restriction.* The governmental unit which has taken the property must then provide just compensation for the period of the taking. Therefore the fact that the DNR's ruling which took Zinn's property was later rescinded does not prevent Zinn, if her allegations are proven at trial, from recovering just compensation for the period in which her property was taken.

*Zinn*, 112 Wis. 2d at 429 (emphasis added).

¶ 30. The court in *Zinn* rejected the state's argument that the ruling was not a taking because the DNR did not intend to take Zinn's property. *Id.* at 429–30. We stated:

> It is well established that "the constitution measures a taking of property not by what a state says, or by what it intends, but by what it *does.*" *San*

---

[18] As noted earlier, the United States Supreme Court later reached the same conclusion in *First English.*

*Diego*, 450 U.S. at 652–53 (Brennan, J., dissenting) [internal quotation omitted]. It is the *effect* of the state's action that triggers the Just Compensation Clause, not the intent of the government in taking the action which led to the deprivation of private property rights. If government action has the effect of taking private property for public use, just compensation must be made.

*Id.* at 430 (emphasis in original). This court also held that a decision of an administrative agency could constitute a taking, reasoning that the civil immunity of the individual decision-makers did not alter the fact that just compensation is constitutionally due whenever a taking occurs. *Id.* at 431.

¶ 31.   For these reasons, this court concluded that Zinn had stated a valid claim for a temporary regulatory taking under Article I, § 13 of the Wisconsin Constitution. *Id.* at 432. The court then tackled the issue of the proper remedy for Zinn's claim. *Id.* We concluded that in the absence of applicable legislatively prescribed procedures for obtaining just compensation, a claim for a taking may be brought directly under art. I, § 13 of the Wisconsin Constitution. *See id.* at 437–38. *See also Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 28–29, 558 N.W.2d 83 (1997). Since there were no existing statutory procedures for recovering just compensation in cases involving temporary takings,[19] *Zinn*, 112 Wis. 2d at 437–38, we permitted Zinn

---

[19] The court in *Zinn* specifically rejected the argument that a landowner who suffers a temporary taking should be required to proceed under Wis. Stat. § 32.10, which allows a landowner to sue for "inverse condemnation" if he or she "believes that his or her property has been taken by the government without instituting formal condemnation proceedings." *Zinn*, 112 Wis. 2d at

to pursue her temporary regulatory taking claim directly under art. I, § 13. *See id.* at 423–24, 432.

## B.

¶ 32. We are satisfied, based on the foregoing legal principles, that the Eberles have stated a valid claim for a temporary[20] regulatory taking under Arti-

432–33, 438. In doing so, we explained that Wis. Stat. § 32.10 (1979–80) does not apply to temporary takings:

> The statute is designed solely to deal with the traditional exercise of eminent domain by the government: the government has occupied private property, plans to continue such occupation and the landowner is merely requesting just payment for this land. In effect the land which has been taken by the government without first commencing condemnation proceedings is sold to the government by the landowner.

> But this is not the situation presented by the facts alleged in the complaint. Here, the state, through the action of the DNR, has for a temporary period taken title to the plaintiff's land. The ruling affecting the title transfer has since been rescinded and the state does not want the land and the plaintiff does not want to "sell" the land to the state. The landowner simply wants just compensation for the period in which the state took the property which has since been returned. Sec. 32.10, Stats., was simply not designed to remedy this type of taking.

*Id.* at 433–34. We note that the language of Wis. Stat. § 32.10 has remained substantially the same since *Zinn* was decided.

[20] Because the circuit court eventually ordered the Board to issue the permit, any regulatory taking claim asserted by the Eberles would have to be for the temporary deprivation of use which occurred during the period in which the permit denial was in effect. Consistent with *Zinn*, we do not attempt to pinpoint this time period, leaving that issue to the determination of the circuit court upon remand. *See Zinn*, 112 Wis. 2d at 427 & n.5. We note, however, that if a regulatory taking is found to have occurred, the government must "pay just compensation for the period commencing on the date the regulation first effected the 'taking' " and ending on the date that the regulation

cle I, § 13 of the Wisconsin Constitution.[21] We agree with the circuit court that the Eberles have alleged a claim for a taking. The Eberles claim that the Board's improper denial of the special exception permit temporarily deprived them of the ability to access their property by way of Timber Lane, the only legal means of access. Certainly, under the circumstances of this case, a complete lack of legal access to a piece of land constitutes a deprivation of "all or substantially all practical uses" of that land. *Zealy*, 201 Wis. 2d at 374. The Eberles could hardly be expected to parachute onto their property in order to use it.

¶ 33.   Further, the Eberles have alleged a sufficient legally imposed restriction, as this court applied that criterion in *Howell Plaza II* and *Zinn*. Unlike the plaintiff in *Howell Plaza II*, the Eberles do not allege that a taking resulted from a tentative development plan which the government has not yet implemented or a statement that permits would be denied by a person lacking the authority to deny or grant permits. *See Howell Plaza II*, 92 Wis. 2d at 82–84, 89. It is undisputed in this case that the Board had the legal authority to grant and deny special exception permits, and that it did, in fact, deny such a permit to the

is rescinded. *Id.* at 428 (quoting *San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621, 653–54, 657 (1981)(Brennan, J., dissenting)).

[21] Since the issue was not raised in this court, we do not address whether an Article I, § 13 claim can be brought against these particular defendants. *See Zinn*, 112 Wis. 2d at 430–31. Similarly, the question of whether the Eberles' lack of compliance with the notice requirements of Wis. Stat. § 893.80(1)(b) is not before us. *See* Decision and Order, July 11, 1997 at 6–7 (citing *Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 558 N.W.2d 83 (1997)).

Eberles. In addition, the record makes clear that the Eberles, unlike the plaintiff in *Howell Plaza II*, went to substantial efforts to obtain the permit they needed to build the driveway. *See id.* at 84.

¶ 34. Likewise, a comparison of the circumstances of this case to the facts of *Zinn* make plain that the Eberles have alleged a sufficient legally imposed restriction. The court in *Zinn* held that Zinn had sufficiently alleged a legally imposed restriction because the DNR had the statutory authority to make the ruling, the ruling was binding on Zinn, and the ruling had the effect, under the applicable statutes, of retitling Zinn's land to the state for public use. *Zinn*, 112 Wis. 2d at 426–27. Similarly, the Eberles alleged that the Board had the authority to deny the permit, that the permit denial was binding on the Eberles and legally precluded them from constructing the driveway, and that the denial had the effect of cutting off all access to the Eberles' land. We conclude that the Eberles' allegations are sufficient to constitute a legally imposed restriction.

¶ 35. We are unmoved by the Board's contention that the Eberles should have sought a variance, requested rezoning of the parcel, or asked the County to lift the condition that access had to be from Timber Lane. It would not make sense to require the Eberles to pursue a variance or rezoning when the zoning of the parcel permitted the construction of a driveway to the lot.[22] Further, the record reveals that the Eberles, at

---

[22] In this regard, the instant case is distinguishable from *Zealy v. City of Waukesha*, 201 Wis. 2d 365, 548 N.W.2d 528 (1996). The crux of the plaintiff's complaint in *Zealy* was that the rezoning of the property from a residential classification to a classification which did not permit residential use effected a regulatory taking. *See Zealy*, 201 Wis. 2d at 370–71. This court

the request of the Board, approached the Town concerning reconsideration of the access limitation, and the Town declined. We are persuaded by the Eberles' argument that since the condition was required in the first instance by the Town, the Town's refusal to change its position is sufficient to demonstrate that the Eberles did what they could to get the access limitation lifted.

██

¶ 36. Because the Eberles have alleged facts which, if proved, would show that the Board's denial of the special exception permit resulted in a legally imposed restriction which deprived the Eberles of all or substantially all practical use of Lot 1, we conclude that the Eberles have stated a valid claim for a temporary regulatory taking under Article I, § 13 of the Wisconsin Constitution.[23] We reverse that portion of

---

determined that the plaintiff's claim was not ripe because he did not seek rezoning and was not a taking because the land could still be used for other purposes, including farming, its "historical" use. *See id.* at 372, 380. *See also Eternalist Foundation, Inc. v. City of Platteville*, 225 Wis. 2d 759, 593 N.W.2d 84, 90 (Ct. App. 1999). In this case, unlike *Zealy*, the plaintiffs' claim is not based on dissatisfaction with the way in which the property is zoned. In fact, the Eberles themselves petitioned for the change to the current zoning. Moreover, the Eberles have alleged facts in their amended complaint which, if proved, indicate that the Eberles cannot legally drive themselves or any equipment onto their land from a public roadway. In such circumstances, the Eberles would have a difficult time using the land in this case for anything.

[23] The dissent claims that this conclusion leads us into "uncharted" territory. *See* dissent at 643–44. We find our course to be well mapped.

This court held 16 years ago in *Zinn* that once the government takes action which strips a property owner of "all or

the court of appeals opinion which affirms the circuit court's dismissal of the Eberles' art. I, § 13 claim and remand the matter to the circuit court for further proceedings.

## C.

¶ 37.    Before moving on, we must address the conclusion of the courts below that the court of appeals' decision in *Reel Enterprises v. City of LaCrosse*, 146 Wis. 2d 662, 431 N.W.2d 743 (Ct. App. 1988), *review denied*, 147 Wis. 2d 887, 436 N.W.2d 29 (1988), compelled the dismissal of the Eberles' Article I, § 13 claim. The circuit court and court of appeals reasoned in this case that the circuit court's reversal of the Board's denial of the permit resulted in no legally imposed restriction, and thus, no taking, under the holding of *Reel*. We agree with the Eberles that to the extent that *Reel* holds that no taking can result when a court reverses a decision of a governmental entity, *Reel* is incongruent with precedent of this court and the United States Supreme Court.[24]

---

substantially all beneficial use" of his or her property, just compensation is constitutionally required, regardless of whether the government later restores all use of the property to the property owner. *Zinn*, 112 Wis. 2d at 429–30. Four years after *Zinn*, the United States Supreme Court came to the same conclusion. *See First English*, 482 U.S. at 321 (cited with approval in *Lucas*, 505 U.S. at 1030 n.17).

[24] The Eberles also argue that *Reel* is contrary to Article I, § 9, the "remedy for wrongs" provision of the Wisconsin Constitution. This court has relied on art. I, § 9 in prior cases. *E.g., Estate of Makos v. Wisconsin Masons Health Care Fund*, 211 Wis. 2d 41, 44, 52–54, 564 N.W.2d 662 (1997). Particular conditions must be met for a plaintiff to successfully establish an art. I, § 9 violation. *See Estate of Makos*, 211 Wis. 2d at 60, 67

¶ 38.   In *Reel*, the court of appeals concluded that allegations by the plaintiffs that various actions of the DNR constituted unconstitutional regulatory takings of their land had been properly dismissed by the circuit court. *See Reel*, 146 Wis. 2d at 665–66. The *Reel* court based its holding on the conclusion that even though several of the alleged acts deprived the plaintiffs of all or substantially all use of their land, these acts did not constitute takings because they were not legally imposed restrictions on the use of the land. *Id.* at 666, 676. With respect to the DNR's refusal to approve a sewer extension, the court stated:

> DNR's refusal to allow a sewer extension to the plaintiffs' properties was a restriction on the use of their properties. However, the circuit court reversed the DNR's disapproval of the extension. Consequently, DNR's refusal was not a legally enforceable restriction on the use of the plaintiff's properties. It therefore could not be a taking. Compare *Howell Plaza II*, 92 Wis. 2d at 86, 284 N.W.2d at 893 (taking cannot occur by restraint imposed by agency lacking legal authority to do so).
>
> A legally imposed restriction which the adopting agency later repeals, rescinds or amends may be a compensable temporary taking. [*First English*], 482 U.S. at —, 107 S. Ct. at 2389; *Zinn*, 112 Wis. 2d at 429, 334 N.W.2d at 73. *But if a court reverses the agency's action which created the restriction, a legally imposed restriction does not exist and no taking has occurred.*

*Id.* at 676–77 (emphasis added).

---

(Crooks, J., concurring). Because we overrule *Reel* on different grounds, we do not further address this argument.

¶ 39.   The court in *Reel* cited no authority in support of its novel rule that reversal of an agency action by a court converts an action which otherwise might have been actionable as a taking into one which is not, and our research did not uncover any. It should be evident from our discussion to this point that this rule is unsupported by our decisions in *Zinn* and *Howell Plaza II*, both of which were cited by the court in *Reel*. Other cases cited by *Reel* do not state (or even imply) that there is a distinction in takings law between those agency decisions which are reversed by courts and those which are reversed by the agency itself.[25]

---

[25] The Board and the dissent urge us to adopt the reasoning of the majority in *Landgate, Inc. v. California Coastal Comm'n*, 953 P.2d 1188, 1195, 1204 (Cal. 1998), *cert. denied*, 119 S. Ct. 179 (1998), that when an agency's erroneous action is reversed by a court, there is no taking, because such delay is just a part of the process of developing property. For reasons made clear in the text, we are not persuaded by the reasoning of *Landgate*. We also point out that the argument of the majority in *Landgate* was clearly considered and rejected by the United States Supreme Court in *First English* because Justice Stevens made the same argument in his dissenting opinion in *First English*. *See Landgate*, 953 P.2d at 1205–06 (Chin, J., dissenting) (citing *First English*, 482 U.S. at 334 (Stevens, J., dissenting)).

The dissent would conclude that the Eberles' eventual receipt of their permit renders the period in which the permit denial allegedly deprived them of the use of their land a mere "delay," rather than a "taking." *See* dissent at 646–47. This position is without merit, as we have previously explained. *See First English*, 482 U.S. at 321; *Zinn*, 112 Wis. 2d at 429–30. *See also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, No. 97–1235, 1999 WL 320798, at *16, *22–*23 (U.S. May 24, 1999) (holding that the question of whether a city's repeated refusals to approve development plans deprived a landowner of all economically viable use of the land, and thereby amounted to a

¶ 40. More importantly, however, the *Reel* court's exclusion of actions reversed by courts from the pool of actions which might qualify as unconstitutional temporary takings is contrary to this court's decision in *Zinn* and the United States Supreme Court's decisions in *First English* and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). We explained in *Zinn* that once action by the government results in a sufficient deprivation in use of the property, "there has been taking even though the property owner has regained full use of the property due to the government's rescission of the restriction." *Zinn*, 112 Wis. 2d at 429. Once there has been a taking, it is clear that just compensation is constitutionally *required*. "[T]he just compensation requirement in the Fifth Amendment is not precatory: once there is a 'taking,' compensation *must* be awarded. . . ." *Id.* at 429 (quoting *San Diego Gas*, 450 U.S. at 653–54 (Brennan, J, dissenting)).

¶ 41. The United States Supreme Court later indicated its agreement with these principles in *First English*, in which the Court stated, "We merely hold

---

temporary regulatory taking, was properly submitted to a jury, and citing *First English* with approval); *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 731, 744 (1997) (finding that a regulatory takings claim based on an agency's denial of a building permit was ripe for adjudication); *Lucas*, 505 U.S. at 1015, 1030 n.17 (holding categorically that a denial of all economically viable use of land is a taking, and citing *First English* with approval).

It is important to keep in mind that the question before us at this stage of the litigation is whether there is *any* set of facts which, if proved by the Eberles, would entitle them to relief. *See Zinn*, 112 Wis. 2d at 423. If so, we are not permitted to uphold the dismissal of their complaint. *See id.*

that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First English*, 482 U.S. at 321. *See Lucas*, 505 U.S. at 1030 n.17 (citing this language with approval). The Court in *First English* assumed that the county ordinance at issue had deprived the landowner of all use of its property for a "considerable period of years," and thus, concluded that "invalidation of the ordinance without payment of fair value for the use of the property during this period of time would be a constitutionally insufficient remedy." *First English*, 482 U.S. at 322.

¶ 42. The *Reel* rule runs counter to these settled rules of law. To illustrate, imagine a decision by a governmental entity which constitutes an unconstitutional taking of land. Under the above principles, the landowner is entitled to just compensation starting on the date the decision took effect. Now imagine that the landowner succeeds in getting a court to overturn the entity's decision. In the absence of *Reel*, the effect of the court's decision is to place an ending date on the temporary taking period, and thus, help to determine the amount of just compensation due the landowner. Under *Reel*, however, the effect of the court's decision is to convert the taking, after the fact, into something which was *not* a taking, and thereby wipe out the landowner's ability to recover any just compensation.

¶ 43. As such a result is not consistent with the law of takings established in cases of this court and the

United States Supreme Court,[26] we must overrule this holding in *Reel*. Accordingly, we overrule those portions of *Reel* which suggest that a decision by a governmental entity which is reversed by a court is not a legally imposed restriction which could be cognizable as a taking.[27]

## IV.

¶ 44.   The Eberles have asserted two claims of a temporary regulatory taking contrary to the federal constitution under 42 U.S.C. § 1983,[28] one based on the

---

[26] In *Reel*, the court of appeals attempted to reconcile its decision with *First English* by adopting a narrow reading of that decision. *See Reel*, 146 Wis. 2d at 678–79. The dissent does the same. We are not persuaded by this reasoning, especially in light of *Zinn, First English, Suitum,* and *Del Monte Dunes. See Del Monte Dunes*, 1999 WL 320798, at \*16, \*22–\*23; *Suitum*, 520 U.S. at 731, 744; *First English*, 482 U.S. at 321; *Zinn*, 112 Wis. 2d at 429–30.

[27] Specifically, we overrule the language appearing on pages 676 and 677 which is quoted in the text of this opinion, starting with "DNR's refusal to allow a sewer extension," *Reel*, 146 Wis. 2d at 676, and ending with "a legally imposed restriction does not exist and no taking has occurred," *id.* at 677.

In addition, we overrule those portions of *Reel* which suggest that Wis. Stat. § 32.10 may provide a remedy for a temporary taking. *See id.* at 666, 674–75. As we explained in footnote 16, we came to the opposite conclusion in *Zinn*.

[28] We agree with the court of appeals that any due process claims which might be characterized as other than regulatory taking claims were disposed of by the circuit court and court of appeals in connection with the certiorari review of the Board's denial of the permit. *See* slip op. at 16 & n.13. *See also Williamson County*, 473 U.S. at 199–200; *Gosnell v. City of Troy*, 59 F.3d 654, 658–59 (7th Cir. 1995); *Gamble v. Eau Claire County*, 5 F.3d 285, 288 (7th Cir. 1993). We note that in *Gosnell*, the

Just Compensation Clause of the Fifth Amendment and the other stated in terms of an unreasonable exercise of the police power under the Due Process Clause of the Fourteenth Amendment.[29] We use the same

Seventh Circuit concluded that *Zinermon v. Burch*, 494 U.S. 113 (1990), did not impair the applicability of *Williamson County* to cases in which landowners allege substantive or procedural due process claims stemming from regulations which diminish the value of their land. *See Gosnell*, 59 F.3d at 659.

Further, we reject the Eberles' argument that they will be unable to recover consequential damages unless we permit them to bring their substantive and procedural due process claims. This court has held that the just compensation required by Article I, § 13 of the Wisconsin Constitution may include consequential damages. *See Luber v. Milwaukee County*, 47 Wis. 2d 271, 283, 177 N.W.2d 380 (1970) (determining that a statute limiting recovery for rent loss was an unconstitutional limit on the just compensation recoverable under art. I, § 13). Both this court and the court of appeals have cited *Luber* with approval in cases involving temporary takings claims brought under art. I, § 13. *See Zinn*, 112 Wis. 2d at 437; *W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 631, 635, 460 N.W.2d 787 (Ct. App. 1990), *review denied*, 464 N.W.2d 423 (1990). *See also Wisconsin Retired Teachers Ass'n*, 207 Wis. 2d at 30–31. *But see Rotter v. Milwaukee County Expressway and Transp. Comm'n*, 72 Wis. 2d 553, 562–63, 241 N.W.2d 440 (1976); *Hasselblad v. City of Green Bay*, 145 Wis. 2d 439, 442–44, 427 N.W.2d 140 (Ct. App. 1988).

[29] We recognized in *Hoepker v. City of Madison Plan Commission*, 209 Wis. 2d 633, 651 n.21, 563 N.W.2d 145 (1997), that a regulatory taking may involve either one of two theories: that property was taken without just compensation in violation of the Fifth Amendment or that the taking arose from an unreasonable exercise of the police power pursuant to the Fourteenth Amendment. The Fifth Amendment Just Compensation Clause provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Four-

method for evaluating the ripeness of a federal regulatory taking claim whether the claim arises under the Due Process Clause or the Just Compensation Clause. *See Hoepker*, 209 Wis. 2d at 651 n.21 (citing *Williamson County*, 473 U.S. at 197–200); *Streff v. Town of Delafield*, 190 Wis. 2d 348, 356, 526 N.W.2d 822 (Ct. App. 1994). The fact that a federal regulatory taking claim is predicated upon 42 U.S.C. § 1983 also does not affect the ripeness analysis. *See generally Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725 (1997); *Williamson County Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). Accordingly, for purposes of evaluating ripeness in the instant case, we do not distinguish between the Eberles' two 42 U.S.C. § 1983 temporary regulatory taking claims.

¶ 45.   We have utilized a two-pronged test in determining whether a regulatory taking claim is ripe for adjudication:

> [W]here a regulatory taking claim is made, a plaintiff must prove that: (1) a government restriction or regulation is excessive and therefore constitutes a "taking" of property; and (2) any proffered compensation is unjust. *See MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986). Both ele-

teenth Amendment Due Process Clause states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV. The essential difference between the two types of taking claims is the available remedy. When a regulation is found to violate the Just Compensation Clause, the potential remedy is an exercise of eminent domain and payment of just compensation by the government. *See Williamson County*, 473 U.S. at 172. In contrast, the potential remedy for a regulation which violates the Due Process Clause is invalidation of the regulation and actual damages. *See id.* at 172.

ments must be ripe before a claim is justiciable. *See Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194 (1985).

*Hoepker*, 209 Wis. 2d at 651. *See Suitum*, 520 U.S. at 733–34. A regulatory taking claim does not become ripe under the first element of this test "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Hoepker*, 209 Wis. 2d at 651 (quoting *Williamson County*, 473 U.S. at 186). *See MacDonald, Sommer & Frates*, 477 U.S. at 348–49.

¶ 46.   In regard to the second element, the United States Supreme Court has explained that "because the Fifth Amendment proscribes takings *without just compensation,* no constitutional violation occurs until just compensation has been denied." *Williamson County*, 473 U.S. at 194 n.13. *See Hoepker*, 209 Wis. 2d at 652. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Hoepker*, 209 Wis. 2d at 652 (quoting *Williamson County*, 473 U.S. at 195). *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, No. 97–1235, 1999 WL 320798, at *16 (U.S. May 24, 1999).

¶ 47.   The Eberles' temporary regulatory taking claims fail the second element of the ripeness test. As we have already explained, Wisconsin has a procedure for remedying temporary regulatory taking claims. Plaintiffs seeking just compensation for a temporary regulatory taking may seek just compensation directly under Article I, § 13 of the Wisconsin Constitution, con-

sistent with our holding in *Zinn*.[30] The Eberles appropriately concede in their brief that their claims of temporary regulatory takings under the federal constitution would not be ripe if they are allowed to pursue their Article I, § 13 claim. *See* Eberles' Br. at 27–28.

■

¶ 48.  We hold that the Eberles' federal regulatory taking claims are not ripe for our review. Consequently, we affirm the decision of the court of appeals upholding the circuit court's dismissal of those claims.[31]

---

[30] It should be noted that in concluding that the plaintiffs' regulatory taking claim was not ripe in *Hoepker v. City of Madison Plan Comm'n*, 209 Wis. 2d 633, 653, 563 N.W.2d 145 (1997), we reasoned, in part, that "the legislature has established a procedure for inverse condemnation through which an individual may seek compensation for a regulatory taking. *See* Wis. Stat. § 32.10. The [plaintiffs] have not utilized this procedure." *Hoepker*, 208 Wis. 2d at 653. In light of references in the opinion to a "temporary regulatory taking," *see id.* at 650, 653, 654, this language may appear to suggest that § 32.10 provides a remedy for a temporary taking.

In *Hoepker*, however, it was not clear whether the plaintiffs' unripe regulatory taking claim would involve a temporary or permanent taking; under the applicable ordinance, the plaintiffs potentially could have been required to reserve land permanently or for only a five-year period. *See id.* at 649. The discussion in *Hoepker* regarding § 32.10 was intended to address solely the potential permanent regulatory taking claim, which was the primary focus of the parties' arguments. Accordingly, *Hoepker* should not be construed as supporting in any way the position that temporary takings can be remedied through § 32.10.

[31] We acknowledge that in *Zealy*, this court elected to address the merits of the plaintiff's claim under Wis. Stat. § 32.10 even though we determined that the claim was not ripe.

## V.

¶ 49. Finally, we consider whether the Eberles may recover attorney's fees pursuant to 42 U.S.C. § 1988(b), which provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title,, [sic] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

42 U.S.C.A. § 1988(b). In determining the availability of attorney's fees under § 1988, the threshold question is whether the plaintiff is a "prevailing party." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The United States Supreme Court has explained that a plaintiff may be considered a "prevailing party" under § 1988 if he or she "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). *See*

---

*Zealy*, however, presented this court with a unique opportunity to clarify the law of regulatory takings in light of "extensive briefing by numerous interested persons and entities who filed amicus briefs, many of which exclusively discuss the takings issues raised in this case." *Zealy*, 201 Wis. 2d at 372. Accordingly, we addressed the merits of the case in *Zealy* in "the interests of justice." *Id.* This case does not offer an equivalent opportunity to clarify the law, and only a few short amicus briefs have been filed. Therefore, we do not believe that *Zealy* mandates that we consider the unripe takings claims here.

*Texas State Teachers Ass'n v. Garland School Dist.*, 489 U.S. 782, 791–92 (1989).

¶ 50.   Under the plain language of 42 U.S.C. § 1988(b), our ruling that the Eberles' 42 U.S.C. § 1983 claims were properly dismissed would seem to preclude the Eberles from recovering attorney's fees under § 1988 in this suit. The United States Supreme Court has held that "only a court in an action to enforce one of the civil rights laws listed in s. 1988 may award attorney's fees." *See North Carolina Dep't of Transp. v. Crest St. Community Council, Inc.*, 479 U.S. 6, 15 (1986).

¶ 51.   Since the Eberles' 42 U.S.C. § 1983 claims were dismissed only because they were not ripe, however, the situation is not so clear-cut. The § 1983 claims might become ripe at some later stage in this litigation and the Eberles might successfully pursue them. In that event, this might become "an action to enforce one of the civil rights laws listed in s. 1988," *id.*, and Eberles might be entitled to 42 U.S.C. § 1988 attorney's fees on the § 1983 claims and other claims under the reasoning of the Court in *Hensley*.

¶ 52.   In *Hensley*, the Court ruled that a plaintiff who prevails on some claims but not others may nevertheless be entitled to full attorney's fees under 42 U.S.C. § 1988. *See Hensley*, 461 U.S. at 435. Where claims in a civil rights case "involve a common core of facts or [are] based on related legal theories," the results obtained determine whether the fee should be reduced to reflect the lack of success on some claims. *Id. See Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir. 1992).

■

¶ 53.   If, in the future, the Eberles pursue and prevail on their 42 U.S.C. § 1983 temporary regulatory taking claims, they might qualify as "prevailing par-

ties" deserving of attorney's fees under § 1988. At that point, if the Eberles have renewed their contention that they are entitled to § 1988 attorney's fees, the court should apply the reasoning of *Hensley* in order to determine whether the Eberles are entitled to attorney's fees for other claims in this action. At this early stage in the lawsuit, we are unable to determine whether the Eberles might later be entitled to attorney's fees under § 1988.[32] Therefore, we affirm the court of appeals on this issue.

## VI.

¶ 54.   In sum, we hold that the Eberles have stated a valid claim for a temporary regulatory taking under Article I, § 13 of the Wisconsin Constitution. We conclude that the language in *Reel* upon which the circuit court and court of appeals relied is contrary to established precedent of this court and the United

---

[32] *Texas State Teachers Ass'n v. Garland School Dist.*, 489 U.S. 782 (1989), does not affect our analysis in this regard. The Court in *Texas State Teachers* held that the petitioners were entitled to attorney's fees under 42 U.S.C. § 1988 because they had prevailed on a First Amendment claim and thereby had "material[ly] alter[ed] the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers*, 489 U.S. at 792–93. Unlike the suit in *Texas State Teachers*, it is not clear at this point whether the Eberles' suit will involve a civil rights claim listed in the statute. If not, an award of attorney's fees would not be appropriate. *See North Carolina Dep't of Transp. v. Crest St. Community Council, Inc.*, 479 U.S. 6, 15 (1986). Although we cannot determine at this point in the lawsuit whether the Eberles may recover attorney's fees under § 1988, we stress that nothing in this opinion forecloses the Eberles from seeking attorney's fees under § 1988 at a future stage in this litigation.

States Supreme Court, and accordingly, we overrule that language.

¶ 55. In light of our holding that the Eberles have a valid state law remedy in their art. I, § 13 claim, we determine that the Eberles' federal temporary regulatory taking claims under 42 U.S.C. § 1983 are not ripe for review. Consequently, the Eberles may not seek attorney's fees under 42 U.S.C. § 1988 at this point in this lawsuit, although nothing prevents them from reasserting their right to § 1988 attorney's fees at a later stage in this litigation. Consistent with these conclusions, we reverse the portion of the court of appeals' decision dismissing the Eberles' art. I, § 13 claim, affirm the rest of the court's decision,[33] and remand the matter to the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the circuit court.

¶ 56. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). A commentator recently described the takings jurisprudence of the U.S. Supreme Court as "a top contender for the dubious title of 'most incoherent area of American law.'"[1] Without any acknowledgment of the unsettled nature of takings

---

[33] As we explained in footnote 1, the court of appeals' ruling regarding the order to issue the permit remains unaffected by this opinion.

[1] Jeanne L. Schroeder, *Never Jam To-day: On the Impossibility of Takings Jurisprudence*, 84 Geo. L.J. 1531, 1531 (1996) ("A LEXIS search will produce hundreds of recent articles attempting to reconcile, critique, or condemn Supreme Court takings jurisprudence or to justify, reinterpret, or re-imagine the underlying theory of property.")

law and without reasoned analysis or explanation, the majority opinion today extends the law of temporary takings into new, uncharted spheres.

¶ 57. The law is undisputed in Wisconsin that the state must compensate for temporary takings. *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983). The question is whether this case fits within the cases relating to temporary takings.[2]

¶ 58. The majority opinion overturns Wisconsin precedent[3] on the basis of *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304 (1987). But the majority is extending *First English* beyond its express holding. In *First English*, the U.S. Supreme Court allowed a temporary takings claim to proceed to trial with the allegation that an invalid ordinance imposing a moratorium on building in a flood protection area had denied the plaintiff all use of its property for many years. The U.S. Supreme Court, however, very carefully confined its holding to the facts

---

[2] The *Zinn* case is distinguishable from this case. In *Zinn* the Department of Natural Resources issued a declaratory ruling under Wis. Stat. § 227.06 (1975) and later rescinded the ruling. As a result of the initial declaratory ruling, title to Zinn's property was transferred to the state. As a result of the later rescission, title to the land was transferred back to Zinn. This court concluded: "It is difficult to conceive of a greater restriction on the property, in the absence of actual physical occupancy, than the loss of title to private land. We find that the allegations of the complaint, which demonstrate that the plaintiff temporarily lost title to her land to the state, are sufficient without more to allege a constitutionally compensable taking." *Zinn*, 112 Wis. 2d 417, 427, 334 N.W.2d 67 (1983). Under those circumstances, this court held there was a temporary taking.

[3] See *Reel Enterprises v. City of La Crosse*, 146 Wis. 2d 662, 677, 431 N.W.2d 743 (Ct. App. 1988), citing *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348 (1983).

of the case, namely that an ordinance later declared invalid had denied the plaintiff all use of property.[4]

¶ 59.    The U.S. Supreme Court was careful to distinguish the facts in *First English* from the facts presented in the instant case. In *First English*, the U.S. Supreme Court cautioned that a normal delay in obtaining permits, variances and the like, was quite a different question. The U.S. Supreme Court limited its holding as follows: "We limit our holding to the facts presented, and of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us."

¶ 60.    The holding in *First English* is distinguishable from the situation before us. I would follow the courts that limit *First English* to its facts. In each of these cases, as in the present case, an administrative body refused to allow the landowner's requested use. Thereafter a court overturned the administrative decision and allowed the use requested. *See, e.g., Landgate, Inc. v. California Coastal Commission*, 953 P.2d 1188, 1204 (Cal.), *cert. denied*, 199 S. Ct. 179 (1998) (a delay resulting from a regulatory agency's error in denying an application for building that was corrected on appeal is not a temporary taking); *Chioffi v. City of Winooski*, 676 A.2d 786, 788 (Vt. 1996) (board's improper denial of permit not a temporary taking); *Smith v. Town of Wolfeboro*, 615 A.2d 1252, 1257 (N.H. 1992) (board improperly applying ordinance is not a taking); *Stoner v. Township of Lower Merion*, 587 A.2d

---

[4] Ultimately it was held that there was no taking in *First English. See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 258 Cal. Rptr. 893 (Cal. App. 1989), *cert. denied*, 493 U.S. 1056 (1990).

879, 886 (Pa. Commw. Ct. 1991), *appeal denied*, 604 A.2d 252 (1992) (compensation for temporary taking available only for taking effected by legislation or rule of continuing effect, not for withholding approval under ordinance allowing reasonable use of land); *Lujan Home Builders, Inc. v. Town of Orangetown*, 568 N.Y.S.2d 850, 851 (Sup. Ct. 1991) (board's refusal to approve plat not a taking in substantive constitutional sense).[5]

¶ 61. In all of these cases, the courts refused to view the relatively short time between the application and ultimate government approval of the application

---

[5] In contrast, the majority opinion cites no case, either federal or state, that has held that a denial of a permit or other agency approval that is reversed on appeal constitutes a temporary taking. Instead, the majority opinion refers to two recent U.S. Supreme Court cases. In both cases, unlike in this case, the landowners were ultimately *denied* their request to develop the land. These two cases do not fall within the limiting language in *First English*. Neither is applicable to the case at hand.

First, *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997), a ripeness case, is not a temporary taking case; *First English* is not even cited by the *Suitum* Court.

Second, in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, No. 97–1235, 1999 WL 320798 (U.S. May 24, 1999), five years elapsed and the City rejected 19 different site plans. The governmental unit denied the landowner's final development plan, denied just compensation and did not provide an adequate forum for seeking just compensation for this alleged taking. During the case the City bought the property in question. This was a § 1983 case and most of the discussion in the U.S. Supreme Court opinion involves the right to jury trial. *First English* is cited in the *Del Monte Dunes* opinion merely for the proposition that when a government condemns property for public use, it must provide a forum for seeking just compensation and provide just compensation if there is a taking.

as a temporary taking. Each of these cases hold that regulatory delay inherent in the statutory process of obtaining agency permits and approvals, including an appeal to a court, is part of the regulation of land use and does not normally give rise to a temporary takings claim.

¶ 62.   The result reached by the majority opinion interferes with the balancing of policies underlying our system of permits and approvals by agencies. The permit process is imposed on the public as a whole to ensure the orderly development of real property, simultaneously benefiting and burdening property owners. The protection of public rights may be accomplished by the exercise of the police power unless the damage to the property owner is too great and amounts to a confiscation. Short of that, the government retains the ability, in furtherance of the interests of all citizens, to regulate uses of land. It is only when government regulation goes too far that there is an unconstitutional taking.

¶ 63.   I am not persuaded that delays in the development of property that are occasioned by administrative proceedings are compensable as takings, except perhaps in the most unusual circumstances. A simple mistake in governmental decisionmaking for which a review remedy is available should not ordinarily constitute a temporary taking. I am convinced that the public interest in having important land use decisions made in an orderly way justifies a temporary burden on a land owner. This burden is the inevitable by-product of democratic government.

¶ 64.   In my opinion, the facts alleged in this case demonstrate nothing more than an ordinary delay associated with the usual process for obtaining such a permit, rather than a matter of constitutional magni-

tude. Here, the Dane County Board of Adjustment denied the special exception permit and the circuit court subsequently reversed that denial. The permit process, which includes appeal and review, worked in its intended fashion and the plaintiffs received the special exception permit they sought 14 months after applying for it.

¶ 65. I hope that the majority opinion does not induce government officials and boards to avoid making decisions for fear that the decisions might later be challenged and give rise to lawsuits for damages.

¶ 66. I also write to state my unease with certain facts indicating that the plaintiffs may have contributed to the circumstances giving rise to the damages they claim. On January 20, 1995, the plaintiffs petitioned the Board for a special exception permit. On February 17, 1995, prior to obtaining the permit, plaintiffs sold Lot 1 under a sales agreement that required the plaintiffs to secure all necessary permits, including the special exception permit for constructing the driveway. On July 27, 1995, after a series of public hearings at which the plaintiffs presented detailed plans for construction of the driveway, the Board voted 4 to 1 to deny the permit. Subsequently, the purchasers filed a suit seeking rescission of the sales contract, which the plaintiffs settled at an amount that constituted a $20,000 loss. On September 6, 1996, the circuit court, on certiorari review, reversed the Board's denial of the permit.

¶ 67. On these facts, it appears that the plaintiffs most likely would have avoided most, if not all, losses if they had obtained the special exception permit before beginning construction. Instead, the plaintiffs took a calculated business risk founded upon their expectation that they would obtain the permit.

¶ 68.   In sum, I view the Dane County Board of Adjustment's denial of the special exception permit as falling within the realm of the ordinary processes of governmental decisionmaking and the losses claimed by plaintiffs as falling within the realm of the ordinary risks attendant to the business of real estate development. Accordingly, I agree with the circuit court and would hold that plaintiffs have failed to state a takings claim upon which relief can be based under Article I, section 13 of the Wisconsin Constitution.

¶ 69.   For the stated reasons, I dissent.